## 2955. MAXWELL, executrix, v. SPETH.

1. When one sues for trespass because the defendant caused process against an outsider to be levied on property which the plaintiff owned and held in lawful possession, he can not recover punitive damages without showing malice, or lack of probable cause, or without showing a wilful or wanton trespass.

2. Where a plaintiff in attachment causes property in the possession of a third person to be levied on as the property of the defendant in attachment, and the third person files statutory claim and gets a judgment in his favor, and the claimant then files suit against the plaintiff in attachment, alleging that the levy was a trespass, the plaintiff in attachment (defendant in the pending suit), in order to avoid an implication of malice and lack of probable cause, may show that the judgment in the claim case, finding the property not subject, was erroneous, though he did not except to it.

3. Where a refrigerator used in a dairy business was levied on while in the possession of the proprietor of the dairy, under an attachment against a third person, and the levy turned out to be a trespass, the proprietor of the dairy, upon suing the person who procured the illegal levy of the attachment, can not recover, as a part of his damages, an alleged loss occasioned to him by his business being suspended for five months (during which the title to the refrigerator was being litigated) for lack of a refrigerator, in the absence of evidence that by the exercise of ordinary diligence he could not procure another refrigerator, or that from poverty or other sufficient reason he was unable to give the forthcoming bond authorized by the statute, which would have allowed him to keep the refrigerator.

4. Where a tortious levy is made upon the property of one not a party to the process, and he files statutory claim to the property, and the levying officer holds the property in his possession, awaiting the decision of the court, the claimant, upon recovering a judgment finding the property not subject, can not refuse to take it back from the officer, and hold the person causing the levy liable for its full market value.

DECIDED SEPTEMBER 28, 1911.

Action for damages: from city court of Richmond county—Judge W. F. Eve. September 6, 1910.

*C. H. & R. S. Cohen,* for plaintiff in error.

*William H. Fleming,* contra.

POWELL, J. This case has been before the court previously, and the judgment then was reversed on the ground that the court erred in directing the verdict in favor of the defendant. See *Speth* v. *Maxwell,* 6 *Ga. App.* 630. On the next trial of the case the plaintiff recovered a verdict for $375, and the defendant excepts. The facts are these: Maxwell (whose estate the defendant represents as executrix) had sold to Benson & Devoe a refrigerator and ice-

box on conditional sale evidenced by a writing not recorded. Devoe, of the firm of Benson & Devoe, mortgaged this property to Twiname, but in the mortgage there was a clause stating that it was "subject to claim for payment of balance of purchase-money on separator and refrigerator." This mortgage was duly recorded. Twiname somehow secured the property and sold it to the plaintiff, Speth. At the time of this transaction Speth called Twiname's attention to the clause in the mortgage stating that it was subject to a claim for the balance due on the refrigerator and separator, and Twiname said that it had been paid. Speth, however, did not know who it was that held the alleged claim for the balance of the purchase-money. Later, Maxwell's agent, finding that Speth was in possession of the property, sued out a purchase-money attachment, under the provisions of the Civil Code (1910), § 5084, alleging in his affidavit, in accordance with that law, that Benson & Devoe still owed a balance of the purchase-money and that Speth was holding the property "in fraud" against Maxwell. The attachment ran against Benson & Devoe as defendants, but was levied upon the property while in the possession of Speth. Speth filed claim to the property, traversed the ground of the attachment, as he had the right to do, and the court in that case found the property not subject. Speth then brought this action against Maxwell for damages, alleging as his causes of action the levy of the attachment upon the property in his possession, the taking away from his possession of the refrigerator and ice-box, and the removal of the contents thereof (consisting of milk and butter), causing him to have to close up his business—that of dealing in creamery products. He claimed $200 actual damages for loss of the refrigerator and ice-box and of the stock of goods contained therein; $500 for the breaking up of his business, and $1,000 for the humiliation caused him. He alleged malice and lack of probable cause. The court at the first trial considered the case one brought for the malicious use of civil process (i. e. as for a malicious prosecution of a civil remedy), and directed a verdict for the defendant. This court, in reviewing that judgment, took the view that the case was not an action for the malicious use of civil process, since Speth was not a party to the attachment as sued out (that being merely a case between Maxwell and Benson & Devoe); that the plaintiff's action was for the trespass involved in the levy of process against Benson &

Devoe upon property which they did not own, and which he (the plaintiff) did own, and which was in his possession at the time of the levy, thus bringing the case within the provisions of the ruling in the case of *Williams* v. *Inman,* 1 *Ga. App.* 321 (57 S. E. 1009), and cases there cited. We held that the plaintiff was entitled to recover his actual damages, irrespective of any proof of malice or want of probable cause, and that the case was purely one of trespass. The statement of facts, attached by the reporter to our former decision, may not as clearly disclose the rationale of the holding as it is here disclosed; and the court and counsel in the last trial seem to have been somewhat misled thereby.

We have come to the conclusion that the present verdict can not be sustained under the evidence. The actual damages suffered by the plaintiff were much less than the amount of the verdict, and we do not consider the evidence sufficient to authorize the recovery of punitive damages. While, as this court held in a former decision of the case, punitive damages might be allowed in the event it appeared that the plaintiff had committed the trespass maliciously and without probable cause, still the entire evidence here is sufficient totally to negative the existence either of malice or want of probable cause, or is insufficient to show that recklessness or wantonness of conduct which is usually essential to the allowance of damages of this character. It is not contended that the plaintiff or his agents who sued out this attachment and caused it to be levied were actuated by any actual malice or positive ill will toward the plaintiff, but it is said that legal malice may be inferred from the lack of probable cause existing for the issuance and levy of the attachment under all the circumstances of the case. We are of the opinion that whether the judgment in the claim case by which the property was found not subject to the attachment was correct or not, probable cause nevertheless existed. The only theory on which Speth's title to the property could be considered as superior to Maxwell's reserved title is that he bought without notice, actual or constructive, of the fact that Maxwell had reserved the title in the conditional sale to Benson & Devoe. If with such notice he bought the property, he thereafter held it in fraud of Maxwell's rights, within the purview of the Civil Code (1910), § 5084, relating to attachments for purchase-money. It is not insisted that he had actual notice, but it is insisted that inasmuch as he saw the

statement in the mortgage from Devoe to Twiname, that Twiname's rights were subject to somebody's claim on the property for purchase-money, he had actual knowledge of such facts as to put him upon inquiry, and that inquiry of Twiname alone was not sufficient. We incline strongly to the view that this statement appearing in the title papers by which Speth acquired the property was sufficient to put him upon further inquiry than he made, and, hence, we lean strongly to the view that Maxwell's title was in fact superior to Speth's.

So far as that title is concerned, the question is now foreclosed in Speth's favor by the judgment in the claim case, but that judgment is not at all conclusive upon the question now involved as to whether Maxwell had probable cause to believe that the property was subject to his attachment. That question must be determined without reference to what the court finally held in the claim case. For the purpose of showing probable cause for an unsuccessful action, the prosecutor of that action may show that he lost it through an erroneous judgment of the court. Furthermore, he may show that whether the judgment of the court was erroneous or not, the question involved was reasonably doubtful. Certainly in this case the question involved was reasonably doubtful. Both malice and want of probable cause are lacking. We have not quoted at length from the evidence to show how very cautiously Maxwell and his counsel proceeded in the attachment case, and how very solicitous they were to protect Speth from any injury while the question of his title to the property was being decided; but it is in the record. No part of the verdict can be sustained on the theory that it is a finding for punitive or exemplary damages.

The plaintiff's actual damage consisted in the loss of a small amount of milk and butter, the value of which is not shown by the evidence, and, as he says, in the loss of the refrigerator and the ice-box, the highest proved value of which did not exceed $175. He then claims loss of profits from his business for five months at $75 per month. We are of the opinion that the evidence discloses that Speth's damages, so far as they are ascertainable, except the milk and butter, are traceable to his own refusal to protect himself from the result of the defendant's tort in causing the refrigerator and ice-box to be levied on. Maxwell's attorney testified that he offered to allow Speth to retain the property in his possession until

the question of title could be decided in court, if he would merely give a receipt for the property, showing that he held it subject to litigation. Taking Speth's testimony as a whole, there is a more or less equivocal denial of this offer; but even if we take his testimony as making an issue over this fact, still it is not denied that he was given every opportunity to hold the property by giving a bond, and that he refused to give any receipt or bond for the property, giving the purely captious and wholly mistaken reason therefor that to do so would be to admit that he held the property in fraud. There is no contention that he was not financially able to give the bond, or that he was not given ample opportunity to do so, or that he could not have avoided all damage if he had given the bond. Not only did he have the opportunity of keeping this refrigerator by giving bond, so that his business would not have been broken up during the five months that followed, as he said it was, but there is no evidence that he could not have obtained suitable refrigerators in the city of Augusta, where he lived, for the purpose of carrying on his business; on the contrary, there is evidence that such refrigerators could have been obtained. Speth's only excuse for not buying another refrigerator is that he could not find anything in Augusta that he liked. In fact he candidly and directly admits that he "made no effort to keep up the business," and for this reason we think that under the provisions of the Civil Code (1910), § 4398, and the cognate principles of our law, he could not recover for the loss arising from the suspension of his business during the five months period that ensued immediately after the levy.

As to the value of the refrigerator and ice-box themselves: The rule ordinarily may be, as contended by able counsel for the defendant in error, that the wrong-doer can not compel the adverse party to accept back the property even in mitigation of the damages, and it may be that if Speth had not filed in court his claim, whereby the sale of the property under the attachment was stopped, he could have sued in trover or in trespass and have invoked this doctrine, but we do not believe that one who files a statutory claim to property and succeeds in having the property found not subject, thereby releasing the levy, can then refuse to take back the property, and hold the plaintiff in the attachment, or other proceeding which has been instituted, liable for its full value. If the property

has been damaged or has deteriorated in value while in the possession of the officer, he may claim damages on that account. An execution or other similar process against one person, levied upon the property of another person, is a trespass. If the property proceeds to sale, the plaintiff in fi. fa. (and sometimes the levying officer) and the purchaser at the sale, either or all of them, may be held liable as for a conversion of the property, but if the owner of the property should bring trover or any other remedy, and should recover a judgment for the specific property itself, he could not then turn around and sue and recover the value of the property. Our statute allows the third person whose property has been levied on to file a claim which is in the nature of an action brought for the recovery of the specific property, and when the claimant succeeds in the claim he recovers a judgment, the effect of which is to cause a restoration of the specific property to him, and it becomes his duty, therefore, to accept it back from the levying officer, who in the meantime is required to hold it, not as a trespasser, but as an officer of court. The only theory on which the owner of property can recover for the value of it from one who has tortiously taken the possession of it is that he abandons his title so far as any right to own or control the property in future is concerned, and proceeds to hold the wrong-doer liable for the value of the property as if he had purchased it. If one whose property has been wrongfully levied on intends to treat the levy as a trespass and as a conversion of the property, he ought not to interfere with the course of the process by filing a claim; for the claim holds up the disposition of the property until the claim case can be settled. If the plaintiff in fi. fa. is to be considered as having converted the property so as to be liable for its full value, without any right to restore it in mitigation of the damages, he should be allowed to proceed with the conversion of it to his own use. It would be wholly unjust for the claimant to be allowed to file his claim and hold up the disposition of the property, perhaps for months, and it may be until the property has become much deteriorated in value, obtain a judgment declaring the property to be his, and then refuse to take it, and then hold the plaintiff liable for its value as it was on the date the wrongful conversion took place. We think, therefore, that the plaintiff in the present case can not recover the full value of the refrigerator (it appearing that it had been held subject to

his order ever since the judgment in the claim case). Only such damages as were done it during the pendency of the litigation could be recovered.

Throughout this opinion we have treated the proceedings by which Speth succeeded in defeating Maxwell's levy of the attachment as a claim case. The pleadings in that case are not set forth at length in the record, and Speth, in the brief recital of these proceedings, is not spoken of as a claimant, but as the defendant, and the parties in this court have not spoken of him as claimant, but we have felt it necessary to treat that proceeding as a claim case, for we know of no other procedure by which Speth, not being a party to the attachment, could have succeeded in having the levy dismissed. If it was not a statutory claim, strictly speaking, it must have been some proceeding essentially in the nature of a statutory claim. See Civil Code (1910), §§ 5115 et seq. Otherwise, it was a wholly nugatory proceeding, and the judgment thereon was not entitled to any faith and credit as an adjudication. We reverse the judgment, on the ground that the verdict is without evidence to support it, but what we have said will be sufficient to guide the court in the next trial of the case, thus making it unnecessary for us to deal specifically with a number of the errors assigned in the record.

*Judgment reversed. Russell, J., dissents.*