3664. STOVALL COMPANY *v.* SHEPHERD COMPANY.

1. The purpose of the act approved August 17, 1903 (Civil Code of 1910, § 3226 et seq.), regulating the sale of "goods, wares, and merchandise in bulk," was to protect creditors against fraudulent sales by debtors. It has no application to a general settlement made by a debtor with creditors, where, by the terms of the settlement, all the creditors agree that the debtor's stock of goods, wares, and merchandise shall be turned over to a third person, who shall sell the same solely for the benefit of the creditors, and where the third person, in pursuance of a common agreement, does sell the stock in bulk and pays over to the creditors, according to the agreed pro rata, all the proceeds of the sale.

2. Where a creditor had consented to the agreement set out in the above headnote, and actually aided the common agent of the debtor and creditors in making the sale of the debtor's stock of goods in bulk, for the purpose of carrying out the agreement, he could not, after the sale had been made, but before the money arising therefrom had been paid over by the purchaser to the common agent and distributed to the creditors, recede from the agreement and, by process of garnishment, subject to the payment of his debt any part of the proceeds of the sale, in the hands of the purchaser. The doctrine of estoppel would apply and forbid the dissatisfied creditor from in any manner interfering with or

preventing the consummation of the agreement to which he had been a consenting party.

3. A decision upon the constitutional objections raised to the act of 1903 (Acts 1903, p. 92) is not necessary to an adjudication of the case; and, besides, they are fully controlled by the ruling of the Supreme Court in *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.*, 131 *Ga.* 1.

DECIDED FEBRUARY 12, 1912.

Garnishment; from city court of Madison—Judge Anderson. July 6, 1911.

By consent of the creditors of the Anderson Dry Goods Company, which was insolvent, E. W. Butler took charge of its stock of goods, and, after notice to all the creditors, and by their consent, sold the goods to W. E. Shepherd Company, received the purchase-price, and disbursed it, according to an agreed pro rata, among the creditors. After the consummation of the sale, but before the payment of the money to the creditors, W. W. Stovall Company declined to abide by the agreement which it had made with the other creditors, to accept twenty-five cents in the dollar of the proceeds of the sale, in settlement of its debt, and brought suit against the Anderson Dry Goods Company and Mrs. Anderson, alleging that she was a member of the partnership, and had summons of garnishment served upon W. W. Shepherd Company. Before the summons of garnishment was served, the garnishee paid over the money to E. W. Butler, for disbursement to the creditors of the Anderson Dry Goods Company, and resold all the goods. On proof of these facts, which were set up in the answer filed by the garnishee, the court directed a verdict in favor of the garnishee, on the traverse to the answer; and this judgment is excepted to.

*M. C. Few, William H. Fleming,* for plaintiff.

*Samuel H. Sibley,* contra.

HILL, C. J. (After stating the foregoing facts.)

1. It will be seen, from the evidence as above stated, that the Anderson Dry Goods Company was no party to the sale of its stock of goods to Shepherd Company; that this sale was made by Butler, acting for the creditors and by the consent of all the creditors, for the purpose of carrying out their agreement in the premises. The Anderson Dry Goods Company was not to receive any part of the proceeds from the sale of its stock of goods, and did not in fact receive a dollar of the money. It was all paid by Shepherd Company to Butler, and he prorated it according to the agreement

made with and between the creditors. Stovall Company agreed with the other creditors of the Anderson Dry Goods Company to accept twenty-five cents in the dollar from the proceeds of the sale, in settlement of its debt against the Anderson Dry Goods Company, and not only knew of Butler's sale of the stock of goods to Shepherd Company, but assisted him in making the sale. Stovall Company took no steps to stop the sale, and did not actually object to its consummation by Butler, but, after the sale, refused to stand by the agreement as to the general settlement. The facts being as stated, under the general rule of law applicable to cases of garnishment, there could have been no recovery against the garnishee, for Stovall Company, as a creditor, could only enforce against Shepherd Company, as garnishee, such rights as the Anderson Dry Goods Company had against Shepherd Company; and certainly the Anderson Dry Goods. Company had no claim against Shepherd Company except for the twenty-five cents in the dollar which the creditors had consented to accept, under the agreement in pursuance of which Anderson Dry Goods Company had turned over the stock of goods to Butler as agent and representative of the creditors. And besides, according to the undisputed evidence, all the money which Shepherd Company had agreed to pay for the stock had been paid to Butler before summons of garnishment was served.

It is said, however, that the sale was fraudulent as to the creditors, under the act of 1903 (Civil Code of 1910, §§ 3226, 3227, 3228), and that the garnishee was liable, although it had paid out the funds. The general rule is as above stated, that the garnishee's liability to the creditor of the principal defendant is conditioned upon his liability to the latter. In other words, a creditor can not reach by garnishment process any assets which his debtor could not recover from the garnishee. In *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.*, 131 *Ga.* 1 (62 S. E. 82), the exception to this rule is said to be where the garnishee is in possession of the effects of the defendant under a transfer fraudulent as to his creditors. "In such a case, though the defendant can maintain no action against the garnishee, yet a creditor of the defendant may subject the effects in the garnishee's hands by garnishment." And it is insisted that as the sale of the stock of goods belonging to the Anderson Dry Goods Company was " in bulk," it was void for want of compliance with the act of 1903, supra, and, therefore, Shepherd

Company was liable as garnishee. The act of 1903 referred to, being in derogation of the common law, is to be strictly construed, and is applicable only to cases which fall clearly within its purview. *Taylor* v. *Folds,* 2 *Ga. App.* 453 (58 S. E. 683) ; *Cooney* v. *Sweat,* 133 *Ga.* 511 (66 S. E. 257, 25 L. R. A. (N. S.) 758). The purpose of the legislature in the enactment stated was to protect creditors against a class of sales, frequently fraudulent, which left the creditors of the vendor without any assets with which to pay his debts; or, as expressed in the case of *Cooney* v. *Sweat,* supra, " When merchants sell their entire stock of goods to one person, without notice of any kind to their creditors, a fraud is frequently perpetrated upon the creditors; and it was the intention of the legislature to afford a remedy to the victims of these fraudulent sales." The evil sought to be remedied was the making of sales by debtors of their stock in bulk, thus depriving creditors of assets of property out of which to make their claims. The statute is aimed at the fraudulent conduct of the debtor as a vendor. It has no application whatever to a bona fide arrangement on the part of the creditors with the debtor to protect themselves by agreeing to a composition of their debts, or to an honest assignment on the part of the debtor for the benefit of his creditors. Under the facts of the present case the Anderson Dry Goods Company did not make the sale of its stock of goods in bulk to Shepherd Company. By agreement of all the creditors it consented that Butler, acting for the creditors, and in a sense for the debtor, should make the sale of the debtor's stock to Shepherd Company. So far as Shepherd Company, the garnishee, knew, Butler was alone the vendor. The Shepherd Company dealt with him alone. There is no evidence that he owed any one, and as Shepherd Company, in the role of purchaser, dealt exclusively with him, there was no creditor to be notified of the sale. But even if the Anderson Dry Goods Company is regarded as a vendor, although unknown to the Shepherd Company as a purchaser, the case is not within the terms of the statute, that "it shall be the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash or credit, before paying or delivering to the vendor any part of the purchase-price therefor, to demand and receive from the vendor thereof  .   .   a written statement under oath of the names and addresses of all the creditors of said vendor," etc. Civil

Code (1910), § 3226. And in section 3228 it is provided that, "whenever any person shall purchase any stock of goods, wares, or merchandise in bulk, and shall pay the price or any part thereof, or execute or deliver to the vendor thereof . . any promissory note or other evidence of indebtedness for said purchase-price," without complying with the act, "such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent." According to the evidence in the case, no part of the purchase-price was to be paid to the Anderson Dry Goods Company, or was in fact ever paid to it as a vendor; and it is undisputed that there was no collusion between any creditor and the debtor. The purchase-price was paid to the creditors of the Anderson Dry Goods Company, who were entitled to receive it under the agreement made by them as to a general settlement. To hold that a sale thus made was within the terms of the act would be equivalent to holding that a sale made substantially by creditors, where they had actually received the proceeds of the sale of the stock of goods, would be in conflict with the only purpose of the act,—to protect creditors,—and this, too, at the instance of one of the creditors, who had agreed with all the other creditors as to the terms of settlement with the debtor, and who had actively co-operated in carrying out these terms. As stated, the purpose of the act is to protect creditors from fraudulent sales by debtors, and not to prevent creditors from making a general settlement with their debtors, nor to protect one creditor at the expense of all the other creditors. Such a construction of the act would render void any bona fide general settlement of creditors with their debtors, and would make invalid any lawful assignment made by a merchant of all of his assets in good faith for the benefit of his creditors.

2. Besides, we think that Stovall Company, by every principle of estoppel, was precluded from setting aside the sale made by Butler to Shepherd Company, or from breaking up the general settlement with the creditors. It had agreed to the sale. According to the evidence, it had aided Butler in making the sale as the representative of all the creditors. It had agreed to accept twenty-five cents in the dollar in settlement of its claim against the Anderson Dry Goods Company, and had also agreed that the sale should be made of the stock of goods through Butler to the Shepherd Company, and should mutually bind all the creditors. One creditor

could not, in the absence of fraud or mistake, recede from this agreement, to the injury of other creditors or for the purpose of breaking up the arrangement which had been accepted and agreed to by all of them. *Stewart* v. *Langston, 103 Ga.* 290 (30 S. E. 35). To permit Stovall Company, after entering into the agreement, to recede from it, would not only injure the other creditors by breaking up the settlement, which was presumably to their interest, but would probably leave Butler, who represented Stovall Company and the other creditors, under some legal obligation to Shepherd Company; and it certainly would be inequitable and unfair to Butler to permit Stovall Company to leave him in this position after having agreed to the entire transaction and aided him in making the sale of the goods to Shepherd Company. It would be equally unfair to Shepherd Company to require it to pay in full, as garnishee, the debt of Stovall Company against the Anderson Dry Goods Company, in view of the fact that Stovall Company had been instrumental in inducing Shepherd Company to buy the stock of goods. The doctrine of estoppel is fully applicable to the facts of this case. Civil Code (1910), § 5736.

3. The views above expressed render immaterial the objections raised as to the constitutionality of the act of 1903—Civil Code (1910),. § 3226 et seq. Besides, this court has previously certified to the Supreme Court the same constitutional objection, and the act has been fully sustained (*Jaques & Tinsley* v. *Carstarphen,* supra). There is nothing in the decision of the Supreme Court of the United States in the case of Bailey *v.* Alabama, 219 U. S. 239 (55 L. ed. 191), which contravenes the ruling of the Supreme Court of this State in upholding the act in question.

*Judgment affirmed.*