## 13715.  NATIONAL CASH REGISTER COMPANY *v.* STUBBS.

1. The act of 1903 known as the "bulk-sales act" (Civil Code of 1910, § 3226 et seq.) applies to secured as well as to unsecured creditors.
2. A creditor is not barred from the protection of the act merely because, as security for his debt, he has retained title to property sold by him to the person by whom the sale of the stock of merchandise in bulk is made, nor even by the additional fact that the property to which he has so retained title is excluded by the parties thereto from the operation of the sale in bulk.
3. Mere knowledge by the attorney who holds for collection the claim of such a creditor, of those matters in reference to the sale in bulk of which notice to creditors is required by the Civil Code, § 3227, will not relieve the purchaser of the duty of giving such notice.
4. This was a garnishment case, by a creditor against the purchaser in such a sale; and applying the foregoing principles to the facts as set forth in the record, it was error for the court to direct a verdict in favor of the garnishee.

DECIDED FEBRUARY 10, 1923.

Garnishment; from city court of Tifton — Judge Price.  May 9, 1922.

*Fulwood & Hargrett,* for plaintiff.  *Smith & Christian,* contra.

BELL, J.  The National Cash Register Company sold to Betts-Spurlin Company, a corporation engaged in mercantile business in Tifton, Georgia, a cash register, on credit, retaining title until payment of the purchase-money.  Thereafter the Betts-Spurlin Company sold its stock of goods to one T. E. Stubbs, against whom the Cash Register Company, claiming there was no compliance with the "bulk-sales act," instituted garnishment proceedings. The garnishee answered that it was not indebted to the defendant in any sum, nor had any property belonging to the defendant at the time of the service of the garnishment or thereafter.  This answer was traversed by the plaintiff, and upon the trial of the issue thus formed the judge, at the close of the evidence, directed a verdict against the traverse and in favor of the garnishee; and to this ruling the plaintiff excepts.

The evidence showed that in the sale between the Betts-

Spurlin Company and Stubbs the cash register was expressly excluded. It also shows that unless verbal notice to the Cash Register Company's attorney was such a compliance, there was no compliance, as to this creditor at least, with that part of the "bulk-sales act," embodied in section 3227 of the Civil Code (1910), which requires the purchaser to give the notice to creditors as therein specified. It appears that the vendor furnished the purchaser with a list of the creditors, and that, while the name of the Cash Register Company was not included therein, the purchaser knew of its claim. Contemporaneously with the sale there was a composition between the vendor and its creditors, to whom all the proceeds of the sale were paid directly by the purchaser. In this way the stock of goods was paid for as to the vendor. The latter, however, had to supplement the fund in order to satisfy the composition in full. The Cash Register Company was not a party to this compromise. The attorney holding its claim represented other creditors also, and knew all the details and terms of the sale and of the composition, but consented thereto only for his clients other than the Cash Register Company. The record shows nothing from which the consent of the Cash Register Company could be implied, nor anything which the garnishee or his vendor could have mistaken for consent. Such knowledge of the attorney as to the terms and conditions of the sale, even if inclusive of all the matters mentioned in the code section above referred to, appears to have been derived solely from his participation in the negotiations for a composition in the interest of his clients other then the plaintiff, during which he never at any time waived any of the rights of the Cash Register Company, unless there was a waiver by his failure of action until after sale and composition were closed. Thereafter the Cash Register Company sued its claim to judgment, and by virtue of an execution issued thereunder the register was sold, the proceeds were credited, and the garnishment proceeded for the balance. The sale was not consummated by any representative of the creditors, but by the vendor and the vendee, with an attorney representing them in common, but only them. The creditors were merely agreeing to the proposed composition. But, as already stated, the Cash Register Company was never a party thereto.

The parties to the sale appear to have acted on the assumption

that inasmuch as the Cash Register Company held a retention of title to the register, which they excluded from the sale, and inasmuch as all of the other creditors were being satisfied, there was no need for a compliance with the "bulk-sales act" merely as to the Cash Register Company alone; or if not this, that it was assumed that the knowledge of the latter's attorney was sufficient to relieve the purchaser of the duty of giving the notice as required by the statute. We think neither assumption was justified under the law. The Cash Register Company was not excluded from the protection of the statute merely because it held title to the register which was excluded from the sale. It was not obliged to look solely to the register for its money. A rescission could not thus be forced upon it. Its claim was not one solely in rem, and it could hardly be held to have extended its credit solely upon the faith of the security it held: "The object of the legislature in passing the statute was the protection of persons who had extended credit to merchants on the faith of apparent prosperity indicated by a stock of goods, wares, and merchandise, which could not be sold to one person, but which would be sold out gradually and replenished from time to time." *Cooney* v. *Sweat,* 133 *Ga.* 512 (66 S. E. 257, 25 L. R. A. (N. S.) 758). But the Betts-Spurlin Company appears to have been insolvent, and of course the Cash Register Company could not have been permitted, even without the sale, to obtain an unconscionable advantage over the other creditors who may have had no security. Civil Code (1910), §§ 4609, 3220. But it cannot for this reason be said that he was not affected by by the sale, or excluded from the benefits of the "bulk-sales act." The act does not apply merely to creditors who are unsecured.

If the vendor in fact was insolvent, the Cash Register Company could, of course, have been forced to submit to an election, or a marshaling, but not all of its rights could have been thus disposed of. There was no presumption of law that the register was worth the amount of its debt, even though a substantial payment, the evidence shows, had been made, and in marshaling the assets of the debtor it would have been estimated at its true value only, with this creditor participating then with the others upon at least the balance of its claim. *Lowry Banking Co.* v. *Empire Lumber Co.,* 91 *Ga.* 624 (5) (17 S. E. 968). It appears that the Cash Register Company did just this thing. It proceeded against the security

until the security was exhausted, and then sought only its balance out of the funds which were derived from the sale of the stock of merchandise of its debtor. Its rights, therefore, must be seen to be such as to have entitled it to an insistence upon a compliance with the law in the sale. "By virtue of the act he is simply restored to what rights he would otherwise have lost." *Bank of LaGrange* v. *Rutland,* 27 *Ga. App.* 442 (4) (108 S. E. 821).

Nor was the notice given its attorney or obtained by him in the manner shown by the evidence sufficient to remove the operation of the statute. Mere knowledge by even the creditor itself of the things of which the purchaser is required to give notice in the manner prescribed (§ 3227) will not suffice. "The purchaser of merchandise in bulk is not relieved from the duty of notifying the creditors of the vendor of such proposed sale, as pre- scribed by section 3227 of the Civil Code, by reason of a verbal notice given to them by the vendee himself." *Moultrie Grocery Co.* v. *Holmes-Hartsfield Co.,* 22 *Ga. App.* 512 (3) (96 S. E. 346). See, in this connection, *Wyone Shoe Co.* v. *Daniels,* 136 *Ga.* 192 (3) (71 S. E. 1). But really it hardly appears that the omission of the notice was due to a belief that it was rendered unnecessary by reason of the knowledge of the Cash Register Company's attorney, for Mr. Spurlin, the manager of the selling company, gave evidence as follows: "Mr. Stubbs knew at the time that the Betts-Spurlin Company owed a sum of money to the National Cash Register Company, and Mr. Smith knew it, but we thought they would prefer to retake the cash register in settlement of their claim, as I had paid $100 on it, rather than accept fifty per cent. It was after the negotiations had ended that Mr. Hargrett advised me that the National Cash Register Company would accept only full payment of its debt. When the compromise was made and the stock of goods sold, I thought and expected that the National Cash Register Company would accept my offer to return the cash register in settlement of the balance of the debt, as I had paid $100 on it. I did not regard this claim of the National Cash Register Company as one in which Mr. Stubbs was interested, for the reason that the cash register was a part of the fixtures, and Mr. Stubbs did not buy the fixtures." The garnishee testified: "I did not give any sort of written notice to the National Cash Register Company. Neither did I give any sort of personal notice. Fulwood & Hargrett had

that company's claim for collection and they knew about the entire transaction. The National Cash Register Company's name was not on the list of creditors furnished to me by Mr. Spurlin, although I knew of the existence of the liability in some amount. *I did not* regard that claim as one in which I was interested." While each seems to have believed that the Cash Register Company would take back the register in satisfaction of its debt, there is absolutely nothing to indicate they were misled so to believe. There is no suggestion of any misrepresentation of the Cash Register Company's position or any change of position at any time. They thought that to reclaim the register would be better for this creditor than the composition, and therefore took it for granted that it would do so. But the trouble here is that the Cash Register Company was not obliged to do either, and, so far as the evidence disclosed, never at any time expressly or impliedly agreed to do either the one or the other.

The case does not fall within the ruling of *Stovall Co.* v. *Shepherd Co.*, 10 *Ga. App.* 498 (73 S. E. 761) ; for there all the creditors were parties originally to the composition, and the sale was virtually made at their instance, if not altogether by their authority, and one of them thereafter sought to withdraw from the agreement, and to invoke the provisions of the act in regard to sales in bulk. The evidence in the case now before us demanded a finding that as to the Cash Register Company there was no compliance with the act as to notice; also that there is no estoppel of this company to insist upon the law as it is written. It did nothing by which any one was misled to his injury. The omission by the purchaser seems to have been entirely voluntary.

No matter how innocently the parties to the sale may have acted, and notwithstanding that the act is to be strictly construed, there is no other course but to enforce its provisions in a case where it is applicable, and where there has been no waiver by the creditor of the rights which are provided to him thereunder. Where in such a case there is a failure of compliance by the purchaser, notwithstanding moral fraud may be altogether lacking, " such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent." Civil Code (1910), § 3228.

We are obliged to hold that the evidence did not demand a ver-

dict for the garnishee, and we accordingly reverse the judgment of the court below. If the facts are the same at the next trial a verdict will be demanded for the garnishee.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*