25444.    C. M. MILLER COMPANY INC. *v.* LUNCEFORD.

22

DECIDED JUNE 18, 1936.    REHEARING DENIED JULY 23, 1936.

*Hamilton Kimzey, Irwin R. Kimzey, Herbert B. Kimzey,* for plaintiff in error.

*Bynum & Frankum, F. S. Lytle Jr.,* contra.

PER CURIAM.   J. D. Hill individually owned a retail grocery and meat-market business.   At that time he was indebted to C. M. Miller Company Inc., on three notes, one dated June 22, 1932, for $40.32 and two dated September 26, 1932, for $66.08 and $66.09 each.   In October, 1932, J. D. Hill sold a half interest in this business to Lunceford under this arrangement:   The stock of merchandise and fixtures then owned by Hill were inventoried and invoiced, and Lunceford agreed to purchase and did purchase additional goods and merchandise to equal the invoice of stock and fixtures on hand belonging to Hill, and the partners were to share equally in the venture.   In December, 1932, Hill sold his remain-

ing half interest in the partnership business to Lunceford. No effort was made by Hill or Lunceford to comply with the Georgia bulk-sales act. The notes given by Hill were all dated before the time Hill made the first sale to Lunceford, and represented an indebtedness outstanding at the time of the sale. C. M. Miller Company Inc. did not know of the sale by Hill to Lunceford until after it was made. It sold merchandise to the new partnership, and then sold merchandise to Lunceford after he acquired the whole business. Thereafter, on January 10, 1933, this company brought suit on said notes against Hill, and had levied a fraudulent debtor's attachment on the stock of goods in the store of Lunceford. Hill made a satisfactory adjustment with C. M. Miller Company Inc. of the indebtedness represented by the notes sued on, and on which the attachment was based; and the plaintiff in attachment directed the sheriff to release the goods levied on under the attachment, and to turn the keys to the door-lock of the store back to Lunceford. Thereafter Lunceford brought suit for damages against C. M. Miller Company Inc., alleging that the defendant company committed a trespass by causing said attachment to be wrongfully levied on his property as the property of the defendant in attachment, Hill, whereby his entire stock of merchandise was seized by the sheriff and his store locked by that officer, and that the levy was wilful and wanton and without probable cause. The plaintiff sought a recovery of punitive, as well as actual damages. The judge overruled a general demurrer to the petition, and to this ruling the defendant excepted pendente lite. On the trial the jury returned a verdict in favor of Lunceford for $300. The defendant's motion for new trial was overruled, and it excepted.

■ The plaintiff sought to recover punitive or exemplary damages, as well as actual damages. While it is true that a defendant in attachment can not maintain an action for trespass against the plaintiff in attachment except on the attachment bond, in the absence of allegations and proof that the attachment was sued out with malice and without probable cause, such principle is not applicable where the action is one for trespass brought by a third person against the plaintiff in attachment for a wrongful levy of an attachment on the property of such third person as the property of the debtor. However, as in this case, where the plaintiff in the trespass action, who was not the defendant in attach-

ment, but claims that he was the owner of the goods levied on thereunder, seeks the recovery of punitive or exemplary damages on account of the levy and the seizure of his property under the attachment against the defendant therein, it is necessary and proper that he should allege and prove malice and lack of probable cause. See *Maxwell* v. *Speth*, 9 *Ga. App.* 745 (72 S. E. 292); *Williams* v. *Inman*, 1 *Ga. App.* 321 (57 S. E. 1009); *Speth* v. *Maxwell*, 6 *Ga. App.* 630 (65 S. E. 580); *McCormick* v. *Tribune-Herald Co.*, 13 *Ga. App.* 61 (78 S. E. 779); *Farmers & Traders Bank* v. *Allen-Holmes Co.*, 122 *Ga.* 67 (49 S. E. 816). The petition was not subject to the general demurrer.

■ The controlling question in this case is, were the provisions of the bulk-sales law (Code, §§ 28-203—28-206) applicable to the transactions between Hill and Lunceford? If they were, and the parties should have conducted these transactions in compliance with the requirements of this law, then the title to the goods in the store did not pass from Hill to Lunceford, in so far as the creditors of Hill were concerned, who had extended credit to Hill before the sale of the first half interest in the stock of goods and business to Lunceford. A sale of a stock of merchandise, in violation of or without complying with the provisions of the bulk-sales act of this State, does not vest the title thereto in the vendee, as against creditors of the vendor, who before the sale have extended credit to the vendor. *Parham* v. *Potts-Thompson Liquor Co.*, 127 *Ga.* 303 (56 S. E. 460). In such a case the transaction will be conclusively deemed to be fraudulent (Code, § 28-205), and a creditor of the vendor may sue out an attachment and levy on the merchandise in the possession of the purchaser. *Carstarphen Warehouse Co.* v. *Fried*, 124 *Ga.* 544 (52 S. E. 598); *Kight* v. *Stephen Putney Shoe Co.*, 137 *Ga.* 493 (73 S. E. 740). "It shall be the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash or credit, before paying or delivering to the vendor any part of the purchase-price therefor, to demand and receive from the vendor thereof, and if the vendor is a corporation, then from the managing officer or agent thereof, a written statement under oath of the names and addresses of all the creditors of said vendor, together with the amount of indebtedness due or owing by said vendor to each of such creditors; and it shall be the duty of said

vendor . . to give to the vendee a statement of his assets and liabilities and the cost price of the merchandise to be sold, said cost price to be arrived at by an inventory taken at the time by the seller and purchaser." Code, § 28-203. The purchaser of merchandise in bulk is not relieved from the duty of notifying the creditors of the vendor of such proposed sale, as prescribed by this section, by reason of a verbal notice given to them by the vendor himself. *Moultrie Grocery Co.* v. *Holmes-Hartsfield Co.*, 22 *Ga. App.* 512 (96 S. E. 346). Knowledge of the sale by the creditor or his agent does not relieve the purchaser from the duty of giving the notice. *National Cash Register Co.* v. *Stubbs*, 29 *Ga. App.* 543 (116 S. E. 44). The evidence in this case failed to show any compliance with the bulk-sales act. "Any sale or transfer of a stock of goods, wares, or merchandise out of the usual or ordinary course of the business or trade of the vendor, or whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed, or attempted to be sold or conveyed, to one or more persons, shall be deemed a fraudulent transaction or transfer in bulk in contemplation of this and the three preceding sections." Code, § 28-206.

The object of the bulk-sales law is to protect the creditors of the vendor of a mercantile business. Lemieux *v.* Young, 211 U. S. 489 (29 Sup. Ct. 174, 53 L. ed. 295) ; Kidd &c. Co. *v.* Muselman Grocer Co., 217 U. S. 461 (30 Sup. Ct. 606, 54 L. ed. 839) ; *Cooney* v. *Sweat,* 133 *Ga.* 511, 512 (66 S. E. 257, 25 L. R. A. (N. S.) 758). In construing sales-in-bulk laws the courts have held that the same applies to no particular class of creditors of the merchant, but to all creditors, including other than merchandise creditors. *Anderson* v. *Merchants & Miners Bank,* 161 *Ga.* 12 (129 S. E. 650, L. R. A. 1917F, 232, note). Such law applies to secured as well as unsecured creditors. *National Cash Register Co.* v. *Stubbs,* supra. It has been said that while the bulk-sales law is intended to protect all the creditors, its main purpose is to protect the wholesaler. Escalle *v.* Mark, 43 Nev. 172 (183 Pac. 387, 5 A. L. R. 1512). Thus, one who purchases a retail stock of goods from a merchant who has not complied with the statutory requirement as to notice of sale is not entitled to retain, against creditors of the merchant, articles placed in the stock by him after the purchase, that merely replace the goods sold, and are pur-

chased with the avails of such sales. 12 R. C. L. 530; Young v. Lemieux, 79 Conn. 434 (65 Atl. 436, 129 Am. St. R. 193, 8 Ann. Cas. 452, 20 L. R. A. (N. S.) 160), affirmed 211 U. S. 489 (supra). It is true that the bulk-sales act is in derogation of the common law, and of a person's right to alienate his property without restriction, and therefore is to be strictly construed. The act is applicable only to cases which clearly fall within its provisions. *Long Cigar Co.* v. *Harvey, 33 Ga. App.* 236 (126 S. E. 870); *Stovall Co.* v. *Shepherd Co., 10 Ga. App.* 498 (73 S. E. 761); *Taylor* v. *Folds, 2 Ga. App.* 453 (58 S. E. 683); *Cooney* v. *Sweat,* supra. However, under the Code, §§ 28-203 to 28-206, the following transactions are declared fraudulent and void as against creditors of the vendor, when the provisions of the act are not complied with: (1) Every sale or transfer of a stock of goods, wares, or merchandise in bulk, (2) or of substantially the entire business theretofore conducted by the vendor as such a stock; (3) and every sale or transfer of such a stock out of the usual or ordinary course of business or trade of the vendor. *Yancey* v. *Lamar-Rankin Drug Co., 140 Ga.* 359 (78 S. E. 1078); *Long Cigar Co.* v. *Harvey,* supra.

So where one person sells an undivided half interest in a mercantile business to another and thereby creates a partnership, and the business continues as a partnership, the provisions of the bulk-sales law have been held not applicable. In *Yancey* v. *Lamar-Rankin Drug Co.,* supra, it was ruled that the provisions of these sections of the Code do not apply to a sale by two partners of a two-thirds interest in a mercantile business to two other persons and the retirement of one of the original partners from the business, and the continuance of the business in the name of the new firm, composed of the remaining original partner and the two purchasers; as such transaction, while it may have been out of the usual and ordinary course of trade or business, was not a sale or transfer of a stock of goods, wares, or merchandise. Therefore, standing alone, the sale by Hill to Lunceford of the first half interest in the store and merchandise was not subject to and within the provisions of the bulk-sales act. But this view of our Supreme Court is not in harmony with the decisions of courts of other jurisdictions on the subject. Marlow v. Ringer, 79 W. Va. 568 (91 S. E. 386, L. R. A. 1917D, 619); Spokane Merchants

Asso. *v.* Koska, 118 Wash. 445 (203 Pac. 969) ; Daly *v.* Sumter Drug Co., 127 Tenn. 412 (155 S. W. 167, Ann. Cas. 1914B, 1101), in which it was held that a sale of a half interest in a business, by which an equal partnership was formed between the vendor and the purchaser, came within the act, the court saying: "A half interest is a portion of the stock. We do not think the act means that it must be a distinct portion or part severed from the whole stock. The sale of a half interest by a merchant for the purpose of taking the vendee into partnership is within the provisions and reasons of the act, since it very materially changes the relation of the vendor's creditors to the stock, if such sale be valid. Before the sale a creditor could levy upon the whole stock. After the sale, if valid, the creditor of such vendor could not levy upon any of the stock, but only upon the vendor's interest in the whole." That court stated that such a rule would defeat the very purpose of the statute, for thereby the merchant could sell a one-fifth undivided interest to each of four other persons, thus reducing his interest in the stock to one fifth, pocketing the cash from such a sale, and holding the same beyond the reach of his creditors. However, the Supreme Court of this State has laid down a different rule, in construing our statute on the subject.

But, under our Georgia decisions on the statute, when Hill sold a half interest to Lunceford in October, 1932, taking him in as a partner, and thereafter in December, 1932, sold his remaining interest in the business to his partner Lunceford, this brought the sale within the bulk-sales act and rendered the same fraudulent and void as against a creditor of the vendor, whose debt had accrued before the sale of the first half interest to Lunceford. In *Virginia-Carolina Chemical Co.* v. *Bouchelle,* 12 *Ga. App.* 661 (78 S. E. 51), it was held that "Where the owner of a stock of goods sells a half interest therein to another, and a short time thereafter sells to his partner the other half interest in the business, the sale is void as to the creditors of the vendor, unless the provisions of the 'sales-in-bulk act' have been complied with." The *Bouchelle* case is not like *Taylor* v. *Folds,* 2 *Ga. App.* 453 (58 S. E. 683), in which it was held that "a sale by one partner of his interest in a mercantile business to his associates is not within the purview of the act." This is the rule in other jurisdictions, and does not defeat the creditor of the partnership. 51 A. L. R.

398, 403, note. If Hill and Lunceford had been partners in the business at the time the credit was extended to the business, a subsequent sale by Hill to Lunceford of his interest in the business would have been valid, under the decision in the *Folds* case. But Hill and Lunceford were not partners when the creditor extended this credit. After the extension of the credit, Hill sold out a half interest in the business to Lunceford, and then, within less than two months, sold out the other half interest to his partner. "If a transaction of this kind could be sustained, it would be quite an easy matter to defeat the act of 1903 by selling out on one day a half interest in a business and then selling the other half on the day following. No such construction of the act of 1903 is permissible, and the decision in *Taylor* v. *Folds* does not so hold." *Virginia-Carolina Chemical Co.* v. *Bouchelle,* supra. The *Bouchelle* case is on all fours with the case under review. As to a sale by one of a half interest in his business, creating a partnership, a creditor's rights are not entirely defeated; and as to a sale by one partner to another partner, a creditor extending credit to the partnership is not defeated; but where the sale of the undivided interest is to the partner who had just previously bought a half interest, and the credit was extended to the vendor before the first sale, when he owned the business in his own name, unless the provisions of the bulk-sales act apply, the title to the whole stock of goods would pass to the vendee, and the rights of the creditor would be defeated. It is to such a transaction that the decision in 12 *Ga. App.* has application, and this does not conflict with anything ruled in *Taylor* v. *Folds,* or *Yancey* v. *Lamar-Rankin Drug Co.,* supra. There can be no scheme or artifice to evade the bulk-sales act. *Hagan Supply Co.* v. *Morris,* 11 *Ga. App.* 456 (75 S. E. 672).

Applying the above principles to the transactions between Hill and Lunceford in this case, the same amounted to an attempted sale of the entire stock of goods and fixtures, and the provisions of the bulk-sales act should have been complied with in order for Lunceford to have received title thereto as against a creditor of Hill who had extended credit before the sale of the first half interest to Lunceford. It follows that the title to the goods levied on had not passed to Lunceford as against the attaching creditor, and that the levy of the attachment against Hill on the same was not

illegal and wrongful. If there were any goods and fixtures in the store that were not subject to the levy, as being fixtures or merchandise added to the business after Lunceford became sole owner, and which were not in the ordinary replenishment of stock with avails from the sales of merchandise that was subject, the same were mixed and mingled with the goods and fixtures that were subject; and the burden was on Lunceford to separate and distinguish the same. 27 C. J. 667. Applying the above rulings, the verdict in favor of Lunceford was not authorized, and the judge erred in overruling the defendant's motion for new trial. The above determines the special grounds of that motion.

*Judgment reversed. Jenkins, P. J., Stephens and Sutton, JJ., concur.*