26180. INVESTMENT SECURITIES CORPORATION
v. COLE.

98

DECIDED NOVEMBER 30, 1937.
ADHERED TO ON REHEARING, DECEMBER 20, 1937.

*Joe Schreiber, J. B. Moore, Memory & Memory,* for plaintiff in error.

*Highsmith & Highsmith,* contra.

MACINTYRE, J. The plaintiff sued for punitive or exemplary damages as well as actual damages. In his petition the plaintiff claimed actual damages of $500 for the market value of the car and one dollar per day as hire from the time of the seizure until the time of the trial, a period of 168 days. On the trial the plaintiff testified that the fair market value of the car was $400 instead of $500; and as to the additional value he testified: "I reckon one dollar a day was the reasonable value of hire per day. . . I do not know car values, but I think it would be worth that much, and think that is enough." The verdict was for $2500, the full amount sued for. The jury, therefore, must have at least allowed $1932 for punitive damages. The plaintiff's testimony tended to show that he was a young business man living in Appling County, and that he had recently become engaged in business in the adjoining county of Jeff Davis; that he was in possession of an automobile which in good faith he had bought and paid for; that the finance corporation (the defendant) was in possession, as transferee, of a conditional-sale contract, executed subsequently to the time the plaintiff bought the car, covering this same automobile; that this conditional-sale contract was executed by the wife of the person who sold the automobile to the plaintiff; that she lived in Pierce County; that the finance company was in possession of full knowledge of the claim of the plaintiff to this car; that the finance company initiated its attachment proceedings in Pierce County, and when the finance company undertook to levy on the car and prosecute its case against Cole in Pierce County, Cole protested against the levying on his car, and warned the defendant not to deprive him of the possession of his property by levying thereon, and told them that if they would bring a procedure in his home County of

Appling and prosecute the case against him in the county of his residence, he would produce the car so that the case might proceed, otherwise he would not produce the car; that he did not wish to test the title and ownership of his car in a foreign county; that, among other things, he would be forced to give a bond in the foreign county where he probably knew no one in that county who would sign his bond; that on the, night before the levy the agent of the defendant and a special deputy of the sheriff of Pierce County saw the car at the plaintiff's home and could have levied on the car in his home County of Appling, but, instead, waited until the next morning when the plaintiff had gone into Jeff Davis County, where he did business, and there levied upon his car, and that after this a deputy sheriff levied upon the car, entered his levy upon the second original attachment, and carried the car into Pierce County; that the sheriff of Pierce County on the same day made an entry on the original attachment, and included in his entry a statement that he found the car abandoned in the streets of Blackshear (Pierce County); that the plaintiff informed the defendant that he had bought the car from Mr. Hires, the husband of Mrs. Hires; and that the defendant made no inquiry of Mr. Hires as to the truth of this statement. However, the plaintiff himself testified that Mrs. Hires was the person who, as the defendant claimed, had executed the conditional-sale contract; and that she, in the presence of the plaintiff and the defendant's agent, said that her husband told her he had only loaned the car to the plaintiff, and that the plaintiff remained silent in her presence.

In its answer, the defendant "denied that the automobile in question belonged to plaintiff, and denied all the allegations in plaintiff's declaration to the effect that defendant acted in bad faith or in disregard of the rights of plaintiff or otherwise than in perfect good faith and under a bona fide claim of right in the prosecution of its claims against Dr. M. K. MacMillan Hires [a resident of Pierce County], and in having the writ of attachment against Dr. Hires levied upon the automobile claimed by and in the possession of plaintiff." As stated in its brief, the defendant's evidence tended to show "that the attachment for purchase-money which it sued out was based upon a retention-of-title contract executed by Dr. M. K. MacMillan Hires [the

wife of J. Shelton Hires] to Appling Motor Company and J. Shelton Hires and transferred to it by Appling Motor Company and J. Shelton Hires, covering the Plymouth automobile levied on and claimed by plaintiff to be his property; that defendant in perfect good faith and for value, and without any sort of notice of any defect therein or defense thereto, bought said contract; that, not being able to collect the installments on said contract as they fell due, defendant sued out an attachment for purchase-money against Dr. Hires in her home county, but for some time thereafter was unable to locate the automobile covered by the contract and afterwards found in the possession of plaintiff in Jeff Davis County and levied on there, the same apparently having been hidden out to prevent its seizure under legal process; that defendant believed it had a just and honest claim against said M. K. MacMillan Hires and said automobile, and, in instituting and prosecuting said claim by an attachment for purchase-money, defendant acted in entire good faith and without malice towards plaintiff or any one else;" that the defendant's agent examined the records at the Appling County court-house, among other things, to see if the plaintiff had recorded a bill of sale to the car. (However, it is unnecessary for the plaintiff to record or even get a written bill of sale to an automobile if he purchases it, then and there pays for it, and takes possession thereof.)

This is a case where one sues for trespass on account of a wrongful levy of an attachment on his property as property of the defendant in attachment, and seeks to recover both actual and punitive damages. "An execution or other similar process against one person, levied upon the property of another person, is a trespass." *Maxwell* v. *Speth,* 9 *Ga. App.* 745, 750, (72 S. E. 292). "When one sues for trespass because the defendant caused process against an outsider to be levied on property which the plaintiff owned and held in lawful possession, he can not recover punitive damages without showing malice, or lack of probable cause, or without showing a wilful or wanton trespass." *Maxwell* v. *Speth,* supra. The recovery for trespass to personal property is limited to compensation (actual damages), in the absence of aggravations for which exemplary or punitive damages are allowed. The gist of such an action of trespass is the

injury done to the possession of the property. *Jones* v. *Lamon,* 92 *Ga.* 530 (18 S. E. 423); 4 Sutherland on Damages (4th ed.), 4158, § 1092; Bartlett *v.* Chaviers, 14 Ala. App. 279 (69 So. 975); 63 C. J. 889, § 5(B). "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury·may give additional damages, either to deter the wrong-doer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Code, § 105-2002. This provision "is comprehensive in its terms, and embraces every tort of every character and description, committed by every kind of wrong-doer, and visits upon the offender exemplary damages, or damages to compensate for wounded feelings." *City & Suburban Railway* v. *Brauss,* 70 *Ga.* 368, 379. However, in a case such as the. instant one, in order to show that the aggravating circumstances were of such a kind or character as to entitle the plaintiff to recover exemplary damages, it is essential to prove malice or lack of probable cause, or to show a wilful or wanton trespass. *Maxwell* v. *Speth,* supra; *Hughes* v. *Bivins,* 31 *Ga. App.* 198 (3) (121 S. E. 590); *C. M. Miller Co.* v. *Lunceford,* 54 *Ga. App.* 21 (186 S. E. 766). The plaintiff's action was properly laid in this respect, for his petition alleged that "said defendants and its said agent, in causing said levy to be made upon petitioner's property and same to be taken·and carried away as alleged, acted wilfully, wantonly, and knowingly, knowing at the time that said automobile was the property of and in possession of this petitioner [Code], and that the said defendant did not have the right to thus seize, take, and carry away the property of petitioner under process against said Mrs. M. K. MacMillan Hires." See, in this connection, *Savannah Electric & Power Co.,* v. *Horton,* 44 *Ga. App.* 578 (2) (162 S. E. 299); *C. M. Miller* v. *Lunceford,* supra; L. & N. R. Co. *v.* Smith, 141 Ala. 335 (5) (37 So. 490).

Even though a recovery for trespass may be had for actual damages, exemplary damages will usually not be allowed where the trespass was under a claim of right in good faith as under a mistake as to the ownership of the personalty taken under process, but may be awarded even in such a case if there are circumstances of aggravation as enumerated above. 63 C. J. 1046, § 244; Cumberland Tel. &c. Co. *v.* Cassedy, 78 Miss. 666

(29 So. 762); City of Clinton *v.* Franklin, 119 Ky. 143, 26 Ky. L. 1053 (83 S. W. 140). In a suit for trespass to plaintiff's personal property, where the evidence tended to show that before the levy the plaintiff warned the defendant not to deprive him of the possession of his property by levying thereon an attachment sued out against an outsider but not the plaintiff, the malice required for the recovery of exemplary damages need not amount to ill will, hatred, or vindictiveness of purpose; it being sufficient if the defendant was guilty of a wanton or even a conscious or intentional disregard of the rights of another, as such disregard is equivalent to legal "malice," justifying punitive damages for trespass. McGill *v.* Varin, 213 Ala. 649 (9, 10) (106 So. 44); Garden *v.* Houston, 163 Ala. 300 (50 So. 1030); Friedenthal *v.* Goodloe, 202 Ala. 611 (81 So. 553); Foust *v.* Kinney, 202 Ala. 392 (80 So. 474); *Southern Ry. Co.* v. *Jordan,* 129 *Ga.* 665 (59 S. E. 802). It seems to us that although the evidence in this case did not authorize a finding that there was ill will, hatred, or vindictiveness of purpose, nevertheless there was evidence from which the jury might well have found that the plaintiff protested to the defendant's agent against being deprived of the possession of his property, and warned him not to levy; or, to put it differently, the jury might well have found that the act was done in intentional disregard of the protest giving notice of the plaintiff's rightful possession of and claim to the property; and thus the jury were authorized under the evidence to find that legal malice, one of the essentials necessary to imposition of exemplary damages, accompanied the trespass. Goodson *v.* Stewart, 154 Ala. 660 (46 So. 239); L. & N. R. Co. *v.* Smith, supra; Young *v.* Vaughn, 1 Houston (Del.), 331; Dexter *v.* Cole, 6 Wis. 319 (70 Am. Dec. 465). Such a finding by the jury would have authorized them to assess exemplary damages.

However, we are of the opinion in view of the fact that there was no vindictiveness of purpose, ill will or hatred, that the acts of the defendant amounted merely to an equivalent of legal "malice," it further appearing by the plaintiff's own testimony that in making the levy the defendant treated the plaintiff "nice," and that the plaintiff and the defendant saw the wife of the person from whom the plaintiff bought the car, and she said, in the presence of the plaintiff and the defendant's agent, that

her husband had stated he had loaned the car to the plaintiff, and that the plaintiff did not then and there deny this (although we realize that the jury might have decided that the plaintiff thought it was better, in the presence and the home of the wife, not to brand as untrue what the wife stated her husband had said, and that silence under such circumstances was the exercise of discretion), and that the plaintiff's agent examined the record at the court-house, among other things, to see if the plaintiff had recorded a bill of sale to the car. However, it will be noted that the plaintiff violated no duty in not taking a bill of sale to personal property where he bought it, and then and there paid for it and received delivery thereof. It necessarily follows that there was no requirement for recording.

The verdict being for $2500, and all of the testimony, even that of the plaintiff himself, showing that the maximum actual damages were only $568, thus leaving the punitive damages at $1932, it is manifest that the amount of recovery is out of all reasonable proportion to the extent of the injury, and, from its excessiveness, indicates bias or prejudice. Code, § 105-2003; *Ga. R. Co.* v. *Jett,* 95 *Ga.* 236 (3) (22 S. E. 251); *Fire Asso. of Phila.* v. *Fleming,* 78 *Ga.* 733, 735 (3 S. E. 420); *Comer* v. *Foley,* 98 *Ga.* 678 (4), 683 (25 S. E. 671); *Central R. Co.* v. *Strickland,* 90 *Ga.* 562 (6), 571 (16 S. E. 352); *Ga. R. Co.* v. *Eskew,* 86 *Ga.* 641 (7-8), 651 (12 S. E. 1061, 22 Am. St. R. 490); *Chattanooga &c. R. Co.* v. *Lyon,* 89 *Ga.* 16 (15 S. E. 24, 15 L. R. A. 857, 32 Am. St. R. 72). Exemplary damages should be adjusted to all of the circumstances of the case. This case is differentiated from that of *C. M. Miller Co.* v. *Lunceford,* supra, in that in the case cited the only matter for consideration was whether Lunceford had offended against the provisions of the statute known as the "bulk-sales law" and, if so, whether Miller and Company, who sued out the attachment and had the goods levied on, were trespassers. "A sale of a stock of merchandise, in violation of or without complying with the provisions of the bulk-sales act of this State, does not vest the title thereto in the vendee, as against the creditors of the vendor, who before the sale have extended credit to the vendor. . . In such a case the transaction will be conclusively presumed to be fraudulent (Code, § 28-205), and a creditor of the vendor may sue out an attachment and levy on the

merchandise in the possession of the purchaser." If the goods in question were such as were forbidden by the statute to be sold, then Lunceford was violating the law. In the *Lunceford* case, if Miller and Company made a lawful seizure of the goods, *Lunceford ceased to have any interest in them.* He never could reclaim them or the value of them. The inquiry in that case was whether Miller & Company lawfully seized the goods by levying their attachment; that is, whether they acted in good faith (not with malice), and with an intention to execute the law fairly for the purpose for which it was passed, or whether under color and pretense of law, and without any regard to its provisions and designs, they intended to harass Lunceford and take away his property. This was a question of intent. Hence, in that case, it was said it was necessary to allege and prove malice and lack of probable cause, in order to recover punitive damages. In the instant case the plaintiff had an interest remaining in the property, as it was a case of property seized on the attachment execution, and the plaintiff could reclaim it or its value; hence the rule laid down by Judge Powell speaking for the court in *Maxwell* v. *Spelh,* supra, is applicable to cases of the character of the one now under consideration. See Rogers *v.* Brown, 20 N. J. L. 119, 123.

The demurrers were not meritorious. The judgment is reversed solely on account of the excessiveness of the verdict.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

ON REHEARING.

MacIntyre, J. We should bear in mind that the jury were authorized to find that the defendant in this case caused the officer to wrongfully levy an attachment on the property in question, over the protest of the plaintiff, who told the defendant from whom he purchased the car that a wrongful sale was made on the attachment, that at such wrongful sale the defendant became the purchaser of the car, and that the plaintiff had not up to that time received anything for his car wrongfully sold. It has been said: "We deduce from the authorities the doctrine to be that exemplary damages are allowable, not only for acts maliciously perpetrated, but also in cases where one knowingly, wantonly, and recklessly does an act fraught with probable injury to person or property, and ultimately producing such injury or damage. 2 Wait's Act. & Def. 448, § 7; Taylor *v.* Railway Co., 2 Am. R. 229 [48 N. H.

304]; Kountz *v.* Brown, 16 B. Monr. [Ky.] 577; Wallace *v.* Mayor, 2 Hilt, 440; Shear. & Redf. on Neg. § 600. Such a spirit must be considered as at war with that good faith which ever preserves a just regard for the lawful rights of others." Lienkauf *v.* Morris, 66 Ala. 406, 414. "Exemplary damages are not allowable in an action based on a trespass which, though unlawful, was not malicious; malice is not implied from the mere unlawfulness of the act. But such damages may be imposed where a trespass is wantonly or recklessly committed, though there is no proof of actual malice toward the plaintiff." 4 Sutherland on Damages (4th ed.), 4164, § 1095. "In trespass against an officer, who on a writ against a husband persisted in attaching the goods of the wife after being told that they were her property, the value of the goods is not the measure of damages, and the court will not disturb a verdict against such officer for a sum much in excess of such value." Cassium M. Von Storch *v.* Winslow, 13 R. I. 23 (43 Am. R. 10). We did not hold in this case that a mere disregard of the rights of others would authorize a recovery of exemplary damages against the trespasser; for that element exists in every trespass, except possibly those committed in honest mistake or accident or misadventure. So, if every trespass committed in disregard of the rights of another entitles the injured party to exemplary damages, there are few conceivable trespassers against whom exemplary damages may not be recovered. What we hold is, that, to authorize a recovery of exemplary damages in the instant case, there must be at least a wanton or conscious or intentional disregard of the rights of others. *Jones* v. *Lamon,* 92 *Ga.* 529, supra; Wilkinson *v.* Searcy, 76 Ala. 176, 181. Such a spirit must be considered as in conflict with that good faith which ever preserves a just regard for the lawful rights of others. Upon a reconsideration of the entire case, granted on motion of both parties, we adhere to our original judgment.

*Broyles, C. J., and Guerry, J., concur.*