GRIEL *vs.* HUNTER.

[TRESPASS AGAINST SHERIFF.]

1. *Liability of sheriff as trespasser ab initio.*—A sheriff who levies an attachment on a horse, and, after keeping him twenty-one days, sells him at public auction, without an order of court, the week before the commencement of the term to which the attachment was returnable; the sale being made on the ground that "the charge of keeping the property is very great", (Code, § 2529,) and ten days' notice of it be-

Griel v. Hunter.

ing given,—is not liable as a trespasser *ab initio*, either on account of the sale under such circumstances, or on account of his failure to sell at an earlier day.

2. *Same; premature commencement of action.*—In trespass against a sheriff for levying an attachment against plaintiff's vendor on a horse which was in the plaintiff's possession under his alleged purchase, a recovery cannot be had against the defendant, as a trespasser *ab initio*, on account of an irregular or illegal sale under the process after the commencement of the action, unless the evidence warrants the conclusion that he intended from the first to abuse his lawful authority.

APPEAL from the Circuit Court of Chambers. Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Nathan Griel, against William H. Hunter, and was commenced on the 16th February, 1859. The plaintiff, in his complaint, claimed "two thousand dollars damages for wrongfully taking, on the 14th day of February, 1859, two horses, the property of plaintiff." The cause was tried, at the October term, 1866, "under an agreement to consider as filed all pleas in bar and replications thereto which could be legally filed, and issues duly joined as to all matters which might appear in the evidence." The plaintiff claimed the horses under a purchase from one Isaac H. Lenneberg, and the defendant justified under an attachment against said Lenneberg, which came to his hands as sheriff, and was levied by him on the horses as the property of said Lenneberg.

"On the trial," as the bill of exceptions states, "the plaintiff's evidence showed that, on the 31st day of January, 1859, and for many months prior to that day, Isaac H. Lenneberg possessed and owned the said horses, and, on that day, signed and delivered to him an instrument of writing as follows." (This writing is in the form of an account for goods, wares, and merchandize, bought by plaintiff from said Lenneberg, in January, 1859; specifies various articles of dry goods, with the price of each; and, at the end of the account, "two horses and wagon, $200"; the whole amounting to $533.12, for which a receipt in full was written at the foot of the account, and signed by said Lenneberg.) "The plaintiff's evidence further showed, that the horses mentioned in said instrument were the horses de-

scribed in the complaint; that they were delivered to him by said Lenneberg, on said 31st January, 1859, and continued in his possession, from that day, until the 14th February, 1859, when they were taken from his possession by the defendant and one of his deputies. The plaintiff's evidence further tended to show that, for a long time prior to the 31st January, 1859, he had been in the employment of said Lenneberg as a peddler; that Lenneberg was a merchant in said county, and was indebted to him on account of his said services; and that the horses and goods mentioned in said writing were transferred to him by said Lenneberg in settlement and discharge of said indebtedness. There was, however, a conflict in the proof, on the question of the indebtedness of said Lenneberg to plaintiff. The horses were proved to be worth about one hundred dollars each."

"The defendant then read in evidence the following attachment, with the endorsement and return thereon, and the accompanying affidavit and bond." (The attachment was sued out, on the 12th February, 1859, by Charles Stone, against said Lenneberg, on the ground that the defendant was absconding; and was returnable to the next term of the circuit court of the county, to be held on the second Monday in March. The sheriff's return showed that the writ was levied by him, on the 14th February, 1859, "on one bay or brown horse, and one grey horse, as the property of Isaac W. Lenneberg"; and a subsequent endorsement by him was in these words: "Sold the above described horses on the first Monday in March, 1859, after having given ten days' notice in the *Chambers Tribune*, before the courthouse-door in the town of LaFayette, at public outcry; when Charles Stone became the highest and best bidder for the brown horse, at the sum of ninety dollars, and William Johnson became the highest and best bidder for the grey horse, at the sum of seventy dollars; and the money is herewith returned to the court. The above property sold because the charge of keeping it was very great." Beneath this endorsement is a memorandum, without date or signature, in these words: "Cost of keeping horses twenty-one days, twenty-one dollars.") "The evidence

showed that the horses mentioned in said levy and endorse-ment were the same horses mentioned in the complaint, and which the plaintiff received from said Lenneberg. It was then proved, on the part of the plaintiff, that the defendant admitted, about ten days ago, that he still had the money for the horse sold to Johnson, and that said Stone had never paid what he bid for the other horse, but had taken the horse for his debt on which said attachment was sued out ; and the evidence tended to show that said attachment debt arose out of the sale of one of said horses, by said Stone to Lenneberg, in the spring of 1858."

"Upon the foregoing evidence, the court charged the jury, that the foregoing evidence did not show any such abuse of his authority by the defendant, as sheriff of the county, as could make him liable as a trespasser *ab initio;* and that the sale of said horses by the defendant, without any order of a court or judge, was not sufficient to make him a trespasser *ab initio,* or to deprive him of the protection of said attachment ; to which charges, and to each part thereof, the plaintiff excepted."

The charges of the court are assigned as error.

RICE, SEMPLE & GOLDTHWAITE, for appellant.
W. H. BARNES, *contra.*

JUDGE, J.—The law is well settled, that mere *nonfeasance* does not make a trespasser *ab initio.* There must be such a positive act as, if done without authority, would be a trespass.—*The Six Carpenters' Case,* 1 Smith's L. C. 162, and authorities cited in notes to said case. To make one, who originally acted with propriety under legal process, liable *ab initio,* for subsequent illegal acts, he must be shown to have grossly abused the authority under which he acted. Such a mistake as a person of ordinary care and common intelligence might commit, will not amount to an abuse. *Taylor v. Jones,* 42 N. H. 25.

An application of these principles to the case before us, makes it one of easy solution. The property levied on was subject to the attachment ; consequently, the levy was rightfully made. If, under section 2529 of the Code, it was

the duty of the sheriff to have sold the horses at an earlier period than twenty-one days after the levy, still the failure to do so, being a mere *nonfeasance*, did not amount to a trespass. If, as is contended, the sheriff erred in selling the horses one week before the meeting of the court, without an order authorizing the sale, this was not a gross abuse of his authority. Section 2529 of the Code contemplates a sale without an order of court, if the property "be of so perishing a nature that it will deteriorate greatly in value, or be destroyed before the meeting of the court, or if the charge of keeping it be very great." Under this section, a sheriff is necessarily vested with discretion ; and nothing less than a gross abuse of it would make him liable as a trespasser *ab initio*.

The sheriff, in advertising and selling the horses, doubtless acted by analogy to the requirements of sections 2446 and 2447 of the Code, making it necessary to sell horses, when levied on by *execution* from courts of record, on the first Monday in the month, and to give ten days' notice of the sale by advertisement. The object intended to be accomplished by section 2529 of the Code, might be defeated in many cases, if such analogy was always pursued ; and we must not be understood as holding that it would be proper to pursue it, in all cases.

2. One other point presented by the record may be noticed. Even if the act of selling was such an abuse of authority by the sheriff as would constitute him a trespasser from the beginning, still, it not appearing that the illegal exercise of authority was such as to warrant the conclusion that the sheriff intended *from the first* to do wrong, and to use his legal authority as a cover to his illegal conduct, the action was prematurely brought, it having been commenced more than two weeks *before* the sale.

My brethren both concur in an affirmance on the grounds stated above, but base their conclusion in part, also, upon the authority of the case of *Hartshorn v. Williams*, 31 Ala. 149.

Let the judgment be affirmed.