**McGILL et al. v. VARIN. (6 Div. 395.)**

(Supreme Court of Alabama. Oct. 29, 1925.)

**1. Trespass ⬅➡40(4)—Complaint for trespass to land held sufficient.**

Complaint, alleging plaintiff's ownership of the land, defendant's wrongful entry by force, and time of entry, *held* to contain a sufficient statement of every element necessary in complaint for trespass to land; it being immaterial that the word "trespass" was not used, since such entry could be nothing less than a trespass.

**2. Trespass ⬅➡40(5)—Damage presumed from wrongful entry, though not alleged.**

Damage is conclusively presumed from mere fact of a wrongful entry, and entry alone, without proof of actual damage, will support the action, though absence of any allegation showing actual damage, there being no circumstances of aggravation shown, would limit recovery to nominal damages.

**3. Pleading ⬅➡63—Count for trespass to land held sufficient.**

Count for trespass to land, describing premises and alleging possession in plaintiff, and for breaking and otherwise damaging them, being in Code form, *held* sufficient.

**4. Appeal and error ⬅➡205—When right to enlighten court as to what is expected to be proved by witness arises stated.**

When a question plainly calls for illegal evidence, court need not be enlightened as to what is expected to be proved by witness, right and duty to inform a court arising only when question is so general that answer may be either legal or illegal evidence, according to its tenor when disclosed.

**5. Appeal and error ⬅➡1056(2)—Any error in excluding question to plaintiff held harmless, where defendant's offer of proof showed that answer was irrelevant.**

In suit for trespass to land, when executing a warrant to search plaintiff's premises for intoxicating liquors, any error in excluding question to plaintiff whether she had appeared before civil service board and made charges against defendants, on theory that it showed an animus which might affect her credibility as a witness, *held* harmless, where defendant's offer of proof showed that answer sought was entirely irrelevant and improper.

**6. Appeal and error ⬅➡204(1)—Defendants cannot complain of trial court's rulings on admission of evidence on appeal when not objecting.**

Defendants cannot complain of trial court's rulings on admission of evidence on appeal, in absence of an objection thereto, or a showing of a lack of opportunity to object.

**7. Appeal and error ⬅➡204(1)—Rule for awarding of new trials for admission of grossly prejudicial evidence inapplicable in absence of an objection.**

Rule that, where evidence is grossly prejudicial, and its injurious effect incurable, though no action was made for its exclusion, a new trial should be awarded, is inapplicable to evidence not seasonably objected to.

**8. Appeal and error ⬅➡204(1), 237(2)—Refusal to grant mistrial for admission of prejudicial evidence no ground for complaint.**

In suit for damages for trespass to land, when defendants were executing a warrant to search plaintiff's premises for intoxicating liquors, court's refusal to grant mistrial for admission of prejudicial evidence *held* not ground for complaint, where no objection was made by defendants nor any lack of opportunity to object was shown, or motion made to exclude such evidence.

**9. Trespass ⬅➡56—Malice required for recovery of punitive damages.**

In suit for damages for trespass to plaintiff's land, when executing a warrant to search her premises for intoxicating liquors, malice required for recovery of punitive damages need not amount to ill will, hatred, or vindictiveness of purpose; it being sufficient if defendant was guilty of a wanton disregard of plaintiff's rights.

**10. Trespass ⬅➡56—Wanton disregard of rights "malice," justifying punitive damages.**

A wanton or even a conscious or intentional disregard of the rights of another is the equivalent of legal "malice," justifying punitive damages for trespass to land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**11. Intoxicating liquors ⬅➡249—Search warrant not invalid because issued by commission of public safety and because directed against fictitious owner of premises.**

Warrant to search premises for intoxicating liquors *held* not invalid because issued by commission of public safety of Birmingham, and because it was directed against a fictitious or unnamed owner of premises, in view of Code 1923, § 4743, authorizing recorders to issue search warrants in liquor cases, and ordinance of Birmingham, vesting commissioner of public safety with power of a recorder, and section 4746, authorizing warrant to be directed against unnamed owner of premises.

**12. Searches and seizures ⬅➡7—Statute held not violative of constitutional provisions relating to issuance of warrants for search or seizure.**

Code 1923, § 4743, authorizing search warrants in liquor cases to be issued by certain inferior judicial officers, and section 4746, permitting warrant to be directed against fictitious or unnamed owner of premises, *held* not violative of Const. 1901, § 5, or Const. U. S. Amend. 4, relating to issuance of warrants for search or seizure.

**13. Intoxicating liquors ⬅➡249—Warrant to search premises for intoxicating liquors, directed to fictitious owner, not invalid because affiant and commissioner knew names of persons living thereon.**

Warrant to search premises for intoxicating liquors, directed against a fictitious or unnamed owner thereof, *held* not invalid because affiant

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and commissioner issuing warrant knew name of persons living on suspected premises, since such knowledge was not equivalent of knowing who was in charge of premises, or was responsible for their unlawful use.

**14. Municipal corporations ☞189(3)—Officer protected by search warrant valid on face.**

An officer will be protected in executing a search warrant, where it is valid on its face.

**15. Trespass ☞6—Officers executing search warrant held not liable as for trespass to property.**

Officers, executing warrant to search premises for intoxicating liquors, *held* not liable as trespassers ab initio for damages to owner's property because omitting to restore to their former places personal articles removed from their various depositories, or leaving them in a disorderly condition after the search; no injury having been done to them, and such acts not constituting malfeasance or gross misconduct or malicious injury.

**16. Trespass ☞4—Officers executing search warrant held not liable as for trespass to person.**

Officers, in executing a warrant to search premises for intoxicating liquors, *held* not liable as trespassers ab initio for damages to owner's person, because raising her from the floor and holding her for a short time, where it did not appear that it was other than an exhibition of kindness to a helpless woman whose situation demanded assistance.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action by Lucy M. Varin against J. F. McGill and R. G. Patton. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

The case was tried on counts 3 and 5, to which defendants' demurrers were overruled.

Count 3 of the the complaint, as amended, is as follows:

"Plaintiff claims of the defendants the further sum of $10,000 damages, for that on, to wit, the 24th day of December, 1923, the defendants with force wrongfully entered a certain dwelling of the plaintiff, being house No. 908 North Forty-First street, city of Birmingham, Ala., said premises being the home of the plaintiff and her family, and then and there wrongfully disturbed and generally disordered said premises, depriving the plaintiff of the use of said premises for, to wit, one hour, to the damage of the plaintiff. And the plaintiff claims punitive damages."

Count 5 claims:

"For a trespass by the defendants on the following described tract of land * * * in the possession of the plaintiff, and for breaking and otherwise damaging the said premises, on, to wit. * * *"

Pleas and replications were in short by consent. Defendants justified under a search warrant issued by "W. B. Cloe, Commissioner of Public Safety of City of Birmingham, Ala.," directing any police officer of the city to search the premises at 908 North Forty-First street, and based upon an affidavit made by the defendant J. F. McGill that prohibited liquors were in the possession of "John Doe, alias, and whose name is otherwise unknown to affiant, and who is conducting at 908 North Forty-First street, a residence located in the city of Birmingham, state of Alabama, a drinking place," etc.

The defendants, armed with this search warrant, entered plaintiff's premises at about 3 o'clock, p. m., and met plaintiff in her dining room, where they explained to her their mission. Plaintiff testified that McGill remained in the dining room with her, and that Patton proceeded to the search. As to what then occurred between herself and the officers, and what they did, she testified:

"He [Patton] first searched the sideboard, and there was nothing in there, and never has been in my house, and I told them so at the time; so he goes into Mr. Varin's sideboard and opened that drawer and begin searching in there, and stirring up his business letters. Those papers and letters had never been disturbed since the death of Mr. Varin; nobody ever bothered his business contracts, and that was too much for me, when I saw them stirring around in those business drawers, so I fell unconscious on the floor, and I do not know exactly how long I lay there. I laid on the floor I don't know how long, as I said, and when I was trying to revive like my senses were coming back, Mr. McGill come out of my bedroom, and he come over to me and told me to get up off the floor, and I said, 'I can't get up, I am sick,' and with that Mr. McGill raised me up and pinned me in between his knees and held me there. I said, 'What officer are you?' and he said, 'Mr. McGill.' I says, 'You are no officer; whoever you are, please turn me loose.' I says, 'I have heart trouble; please call Dr. W. H. Wilder.' He says, 'No, ma'am; I can't do that.' I stayed there a few minutes propped in between his knees, and about that time Mr. Patton called him to the rear, and asked him to come back there. When I got strength enough I managed to crawl to my back door, and I got to the bookcase, and I felt my way on to the front door and opened the front door. It was closed at that time, and I saw a lady coming down the street, and I says, 'Will you please send some one to me?' My thought was getting the family physician, and as I was coming back trying to get to my bedroom, I was met by Mr. Patton, and he ran up and says, 'Smell this; here's the evidence.' I says, 'No sir; there's no whisky in that can, never has been.' Mr. McGill says, 'No, Patton, there's no whisky in that can.' At last I managed to get to my bedroom, and I remember Mrs. Balwin saying, 'Will you please get the doctor? This poor woman has heart trouble.' I don't remember anything else."

On cross-examination, she testified:

"I was not arrested by either Mr. Patton or Mr. McGill on this occasion. * * * I said

that Mr. McGill held me between his knees. He raised me up from the floor and told me to get up, and I told him I couldn't get up, and he just propped me up between his knees and held me there. I did not mean by that to say that he was making any improper use of my person."

Plaintiff further testified that in the course of the searching many articles were removed from drawers or trunks, and were cast out on the floor and left there in a disordered condition, but did not state that any of them were injured.

Defendants denied many of plaintiff's statements, and especially as to McGill's holding her propped between his knees, and as to throwing articles out of places and leaving them on the floor; and they testified that, after plaintiff fainted the second time, they discontinued the searching, and soon afterwards went away, leaving a number of people there with her.

At plaintiff's request, the trial judge charged the jury:

"That the malice required for the recovery of punitive damages in this case need not amount to ill will, hatred, or vindictiveness of purpose. It is sufficient if the defendant is guilty of a wanton disregard of the rights of the plaintiff."

He charged also:

"That the malice required for the recovery of punitive damages in this case need not amount to ill will, hatred, or vindictiveness. It is sufficient if the defendant is guilty of a wanton disregard of the rights of the plaintiff."

Defendants' request for the general affirmative charge was refused, as was also their request for the following charge:

"The court charges the jury that they cannot find a verdict for the plaintiff unless they are reasonably satisfied from the evidence that the defendants used more force than was necessary to effect a search of the premises described in the search warrant offered in evidence."

There was a verdict, with judgment, for plaintiff for $3,000, from which defendants appeal.

Mullins & Jenkins, of Birmingham, for appellants.

Counts 3 and 5 contain unauthorized conclusions of the pleader, without setting out issuable facts; said counts fail to aver facts constituting trespass. Dothan v. Horseman, 197 Ala. 499, 73 So. 38; Worthington v. Davis, 208 Ala. 600, 94 So. 806. It is error to sustain objection to counsel stating to the court what he expects to show by a witness. B. R., L. & P. Co. v. Barrett, 179 Ala. 274, 60 So. 262; Georgia Cot. Co. v. Lee, 196 Ala. 599, 72 So. 158; Brown v. Mobile Elec. Co., 207 Ala. 61, 91 So. 802; Peagler v. State, 110 Ala. 11, 20 So. 363. For introduction of evidence of plaintiff's bereavement, defendant's motion for a new trial should have been granted. Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann. Cas. 1916E, 565. The charge as to what was sufficient for a recovery for punitive damages was erroneously given for plaintiff. Foust v. Kinney, 202 Ala. 392, 80 So. 474. Defendants were not trespassers ab initio. L. & N. v. Bartee, 204 Ala. 539, 86 So. 394, 12 A. L. R. 251; Snedecor v. Pope, 143 Ala. 275, 39 So. 318; 14 Am. Dec. 366, note. It is not necessary that a search warrant name the person whose premises are to be searched. Code 1923, § 4743. The commissioner of public safety had authority to issue the warrant. Code 1923, § 4742; Ordinance 777–C, City of Birmingham.

William S. Pritchard, J. D. Higgins, W. F. Spencer, and Ralph Quinn, all of Birmingham, for appellee.

The counts on which the case was tried were sufficient. Code 1923, §§ 9457, 9531; Hardeman v. Williams, 169 Ala. 50, 53 So. 794; Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 So. 470. The warrant was void and the defendants were trespassers ab initio. Code 1923, §§ 9457, 9531; Counts v. Harlan, 78 Ala. 551; 35 Cyc. 1267; Const. 1901, § 89; U. S. v. Borkowski (D. C.) 268 F. 408; West v. Cabell, 153 U. S. 78, 14 S. Ct. 752, 38 L. Ed. 643.

SOMERVILLE, J. [1] Count 3 of the complaint contains a sufficient statement of every element necessary in a complaint for trespass to land—(1) plaintiff's ownership of the land; (2) defendants' wrongful entry by force; and (3) the time of the entry. 38·Cyc. 1078 (II).

[2] Damage is conclusively presumed from the mere fact of a wrongful entry (Parker v. Mise, 27 Ala. 480, 62 Am. Dec. 776; 38 Cyc. 995, [B] [1] and [2]) and the entry alone, without proof of actual damage, will support the action. Hence, so far as the sufficiency of the complaint on demurrer is concerned, there need be no allegation of damage; though of course the absence of any allegation showing actual damage—there being no circumstances of aggravation shown—would limit the recovery to nominal damages.

This count, it is true, does not use the word "trespass," but an unlawful entry upon premises by force—which is the language here used—could be nothing less than a trespass. Hardeman v. Williams, 169 Ala. 50, 56, 53 So. 794.

[3] Count 5 is in Code form, and is clearly sufficient. Hardeman v. Williams, supra.

[4] When a question plainly calls for illegal evidence, there is no occasion for the enlightenment of the court as to what is expected to be proved by the witness. The right and the duty to so inform the court arise only when the question is so general that the answer may be either legal or illegal evidence, ac-

cording to its tenor when disclosed. B. R. L. & P. Co. v. Barrett, 179 Ala. 274, 285–290, 60 So. 263, reviewing all the cases.

[5] If it be conceded that it was competent for defendants in this case to show, on the cross-examination of plaintiff, that she had appeared before the civil service board of Birmingham and made charges against these defendants, this on the theory that it showed an animus which might affect her credibility as a witness, yet the statement made by defendants' counsel of what they expected to prove, though the completion of the statement was not permitted by the court, showed with certainty that the answer sought, viz. the judgment of the civil service board on plaintiff's charges against defendants, was entirely irrelevant and improper. If there was technical error in the previous rulings, it was cured by the statement referred to.

[6] The bill of exceptions shows that plaintiff's counsel asked her, "What was the grief you were suffering from?" It shows neither objection thereto by opposing counsel, nor any lack of opportunity to object. Defendants can therefore have no advantage of the illegality of the evidence thus adduced on appeal from the judgment. Following the answer, counsel did move for a mistrial on account of the prejudice supposedly engendered by the fact of plaintiff's recent bereavement, and the trial court's refusal to so order was presented as a ground for new trial in a motion duly filed, and through that medium is presented now for review.

[7, 8] The trial judge, ex mero motu, instructed the jury to disregard as irrelevant and immaterial the fact of plaintiff's bereavement; but counsel invoke the principle laid down in B. R. L. & P. Co. v. Gonzalez, 183 Ala. 273, 286, 287, 61 So. 80, Ann. Cas. 1916A, 543, and other cases, that, where the matter is grossly prejudicial, and its injurious effect incurable, though no motion was made for its exclusion, a new trial should be awarded. That principle, however, is not applicable to evidence not seasonably objected to, a limitation which is carefully stated as the necessary basis for remedial action in the case of Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann. Cas. 1916E, 565, cited and relied on by counsel for appellants. Suggestion is made in brief of counsel that the question was asked and the answer made before counsel had time to make their objection. If so, the bill of exceptions should show that fact, and motion should have been made to exclude the answer. As the record stands, error cannot be visited upon the action of the court in refusing to grant a mistrial.

[9, 10] The instruction given to the jury at plaintiff's request as to the basis for punitive damages was a correct statement of the law. It merely defined the malice required, and did not authorize a recovery for that alone. A wanton, or even a conscious and intentional, disregard of the rights of another, has always been held as the equivalent of legal malice. Gulsby v. L. & N. R. Co., 167 Ala. 122, 52 So. 392; Lunsford v. Dietrich, 93 Ala. 656, 9 So. 308, 30 Am. St. Rep. 79.

The trial judge instructed the jury that it was the right and the duty of defendants to search plaintiff's premises under the search warrant exhibited. Counsel for plaintiff contend that the warrant in question was void upon its face, and cannot support a plea of justification under legal process: (1) Because the commission of public safety of the city of Birmingham was without legal authority to issue it; and (2) because it was directed against a fictitious or unnamed owner of the premises.

[11] Neither of these propositions can be sustained. Section 4742, Code of 1923, provides that search warrants in liquor cases may be issued by certain inferior judicial officers, and "by recorders or other municipal judges of towns or cities by whatever name called." Under the "Five Commissioners Act" of 1915 (Anderton's Code of Birmingham, pp. 3–26), provision is made for the division of municipal administration into five departments, with a commissioner at the head of each. One of these is the department of public safety, and the powers and duties of each department and its head are to be prescribed by the commission. Under section 7 of an ordinance adopted by the commission (Anderton's Code, p. 32) the commissioner of public safety is given "authority and power to himself sit as a recorder."

Section 4743, Code of 1923, authorizes the issuance of search warrants "naming or describing the person or other party whose premises are to be searched, if known. * * *" And section 4746 provides that, "if the warrant is sought to search a place whose keeper or owner is unknown, the affidavit may so state, and the warrant may issue accordingly."

[12] We are unable to see that these statutory provisions are offensive to any constitutional restriction upon the issuance of warrants for search or seizure. Constitution of Alabama of 1901, § 5; Constitution of the United States, Fourth Amendment.

[13, 14] A further contention is that the warrant, though valid on its face, was in fact bad because the affidavit in support of it was made by the defendant McGill himself, and both he and Commissioner Cloe knew that the persons living on the suspected premises were named Varin. This, however, was not the equivalent of knowing which member of the family was in charge of the premises, or was responsible for their unlawful use for storing or harboring prohibited liquors. But, in any case, the warrant was valid upon its face, and that is the test of its defensive value to the officer who executes it.

It results that the entry of defendants upon plaintiff's premises, and their search of the premises for prohibited liquors, were fully justified by the warrant under which they acted, and they could not be held liable for a trespass in so doing unless they abused the process in such manner and degree as to make them trespassers ab initio.

Plaintiff's contention is that her evidence, if believed, shows such an abuse; the specifications relied upon being the alleged act of defendant McGill in lifting plaintiff from the floor when she fainted, and "propping" or holding her for several minutes between his knees, and in leaving various articles, removed during the search from their depositories, in disorderly fashion on the floor, or in other unappointed places.

This court has adopted and adhered to the rule originally declared in The Six Carpenters' Case, 1 Smith's Lead. Cas. 262, as to the subsequent conduct which will render one who takes or enters upon property under authority given by law, a trespasser from the beginning.

In Griel v. Hunter, 40 Ala. 542, 545, it was said:

"The law is well settled that mere non-feasance does not make a trespasser ab initio. There must be such a positive act as, if done without authority, would be a trespass. * * * To make one, who originally acted with propriety under legal process, liable ab initio for subsequent illegal acts, he must be shown to have grossly abused the authority under which he acted."

In McAden v. Gibson, 5 Ala. 341, it was held that a sheriff's omission to return an attachment deprived him of the right to justify under it. But that case was explained and limited in Hartshorn v. Williams, 31 Ala. 149, 155, where it was said:

"The rule in McAden v. Gibson is one of mere policy, and adopted in this state upon the weight of authority; and we do not think its extension is demanded by the interests of society, or consistent with justice. Under the authority of that case, the mere omission to return process converts the officer into a trespasser ab initio; while it is well settled, in all cases, that an abuse of authority must consist of some positive, affirmative act, or of a misfeasance, as contradistinguished from a nonfeasance."

In the case of Gay v. Burgess, 59 Ala. 575, it was held that:

"When the sheriff [holding property seized under a writ of detinue, for the possession of which the plaintiff had failed to give the bond required by the statute] refused to restore possession of the property to defendant, and delivered it to the plaintiff, he overstepped and abused the authority with which the law intrusted him, and was guilty of a wrong under color of his office, and must be regarded as a trespasser ab initio."

Stress was laid upon the fact that the act of the officer was in defiance of the positive mandate of the statute.

Some of the courts have declined to recognize, or at least have failed to apply, the distinction between acts of nonfeasance and acts of misfeasance, and Judge Freeman has criticized the distinction as being unfounded in reason, though he concedes that it is amply supported by authority. Barrett v. White, 3 N. H. 210, 14 Am. Dec. 352, note 365.

In the principal case (Barrett v. White), Chief Justice Richardson reviewed many cases, and in conclusion observed:

"On the whole, it is believed, that an attentive examination of all the authorities will clearly show that a man may become a trespasser ab initio, not only by using an authority, which the law gives him, for improper purposes, or by pushing the exercise of it beyond its due limits, but by exercising it in an improper and illegal manner to the prejudice of another."

The theory of the doctrine of trespass ab initio is thus stated by Judge Freeman in his note to that case:

"It is not every trifling irregularity in the execution of process which will render an officer a trespasser ab initio. There must, it would seem, be such gross misconduct as to furnish an indication [or, as elsewhere stated, to warrant the conclusion] that he intended at the outset to use his process as a cover for wrongdoing. It would not be just, for any slighter cause, to deprive him of the protection of the process as to what has been rightly performed."

This conception of the law seems to have been hinted at in Griel v. Hunter, 40 Ala. 542, 546. However, the exigencies of this case do not require our approval of the principle that an officer entering under valid process will not be held as a trespasser ab initio, unless it is inferable that he intended the subsequent wrong at the time of his entry.

[15, 16] Under the foregoing principles of law, which are applicable to this case, it is too clear for serious discussion that the conduct of defendants in omitting to restore to their former places the personal articles removed from their various depositories, or in leaving them in a disorderly condition after the search—no injury having been done to them—was not misfeasance at all, and in any case could not be regarded as gross misconduct or malicious injury. It was in fact no more than simple negligence. As to the alleged conduct of the defendant McGill in raising plaintiff from the floor and holding her for a short time propped between his knees, there is nothing to indicate that it was other than an exhibition of kindness, courteously rendered, to a helpless woman who had fallen upon the floor, and whose situation demanded assistance. Indeed, to have failed to offer such assistance would have condemned the officer's humanity and sense of decency.

Upon the facts detailed by plaintiff in her testimony, a trespass to her person cannot be predicated, either as a conclusion of law or as an inference of fact.

It is not our intention to enlarge the immunity given by law to officers who execute legal process, nor to hold that they do not forfeit that protection when they are guilty of acts of gross misfeasance under cover of the writ during its actual or pretended execution. But we do hold that the acts of alleged misconduct, here relied upon to nullify the protection of the warrant under which these defendants were proceeding, were not of such a character as to make them trespassers ab initio, and to render them liable as though they entered and searched without any warrant at all. To hold otherwise would, it seems to us, be in clear violation of sound legal principle, as well as of sound public policy.

In our view of the law and the facts, the trial judge should have given for defendants the general affirmative charge as requested, and for its refusal the' judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.