Argued March 23, reversed May 17, 1927.

## FLORENCE L. BOWN *v.* O. B. FRANK et al.

(256 Pac. 190.)

**Pleading—Allegations That Assignment in Trust for Creditors Did not Comply With Statute Held Mere Conclusions of Law (Or. L., §§ 8161, 8162).**

1. Allegations that debtor, who assigned his assets in trust for purpose of paying creditors, did not furnish, nor grantee receive, list of creditors as required by Section 8161, Or. L., nor comply with Section 8162, or otherwise, or at all, *held* mere conclusions of law and not averments of fact.

**Trial—Judgment Refusing to Dismiss Garnishment Held Erroneous Because of Failure to Make Findings of Fact and Conclusions of Law.**

2. Judgment, overruling garnishee's motion to dismiss garnishment, *held* erroneous and of no effect because of failure of trial judge to make findings of fact and conclusions of law on issues of fact propounded by garnishee's answer to allegations and interrogatories filed by plaintiff.

**Estoppel—Creditor, Adopting Debtor's Assignment by Presenting Claim, cannot Thereafter Bring Action Against Debtor.**

3. Where creditor adopted debtor's assignment by presenting claim to assignee and having it allowed, she was precluded from thereafter pursuing inconsistent remedy of bringing action against debtor and garnishment.

**Fraudulent Conveyances—Debtor's Assignment of Property in Trust for Payment of Creditors Held not "Sale" Within Bulk Sales Law (Or. L., §§ 8161, 8162, 8164).**

4. Transaction whereby debtor assigned assets of third person in trust for purpose of disposing thereof and paying creditors *held* not a sale within the meaning of Bulk Sales Law (Or. L.,

---

3. See 2 R. C. L. 722.

4. Applicability of bulk sales law to transfer in payment of creditor, see note in 12 L. R. A. (N. S.) 174.

§§ 8161, 8162, 8164), in that there was no attempt to divert property from *pro rata* application of it to payment of assignor's debts without reserve, and was clearly within the spirit of the law.

**Fraudulent Conveyances—Law Restricting Right of Owner to Dispose of Property must be Strictly Construed (Bulk Sales Law [Or. L., §§ 8161, 8162, 8164]).**

5. Bulk Sales Law, as codified in Sections 8161, 8162, 8164, Or. L., in that it restricts common-law right of an owner of property to dispose of the same, must be construed strictly.

Assignment for Benefit of Creditors, 5 **C. J.**, p. 1189, n. 56, p. 1190, n. 48, p. 1257, n. 39, p. 1295, n. 89, p. 1296, n. 90.
Fraudulent Conveyances, 27 **C. J.**, p. 874, n. 16, p. 875, **n.** 36, 37, 38, p. 883, n. 31.
Garnishment, 28 **C. J.**, p. 323, n. 19 New.
Trial, 38 **Cyc.**, p. 1954, n. 16.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

REVERSED.

For appellant there was a brief over the names of *Messrs. Rice & Orcutt, Mr. Wm. B. Layton* and *Mr. Albert W. Gentner,* with oral arguments by *Mr. Gentner* and *Mr. A. N. Orcutt.*

For respondent there was a brief over the name of *Mr. George Jones,* with an oral argument by *Mr. Albert Abraham.*

BURNETT, C. J.—On January 25, 1921, O. B. Frank executed and delivered to the Adjustment Bureau of the Portland Association of Credit Men, at Portland, Oregon, the following document:

"KNOW ALL MEN BY THESE PRESENTS, That whereas, O. B. Frank, engaged in business at Roseburg, Oregon, under the name and style of ——, party of the first part, is unable to meet his obligations in full, in the ordinary course of business, and desires to transfer his assets in trust for the benefit of his

5. See 12 R. C. L. 525.

creditors in order to obviate litigation and court proceedings.

"Now, Therefore, In consideration of the premises, and the sum of One Dollar and other good and valuable considerations to him in hand paid by the Adjustment Bureau of the Portland Association of Credit Men of Portland, Oregon, party of the second part, the receipt of which is hereby duly acknowledged, the said party of the first part does hereby sell, assign, set over and transfer unto the said party of the second part, all of the following described personal property, to-wit:

"A stock of confectionery located at Roseburg, Oregon, together with all fixtures used in and about said business, subject to that certain mortgage given W. D. Bell on certain of said fixtures. Also, all accounts and bills due and owing, or to become due and owing to said party of the first part.

"To Have and to Hold, All of the described personal property unto the said party of the second part, his representatives and assigns forever.

"This transfer is made nevertheless in trust for the uses and purposes following, to-wit:

"First—To take possession of all of said personal property and make a complete inventory thereof;

"Second—To insure the same against loss by fire;

"Third—To sell and dispose of said stock of merchandise at retail sales or in bulk as may to the said party of the second part seem most advantageous and to collect said notes and accounts by legal process or otherwise;

"Fourth—Out of the proceeds arising from said sales and collections to pay the actual and necessary expenses incurred in carrying out this trust;

"Fifth—Out of the proceeds remaining after the payment of such expenses, to pay all of the creditors of said party of the first part in full, if sufficient funds be realized therefor, and if not, then *pro rata* in accordance with the amounts of the respective claims and demands of said creditors and without preference except as is fixed by law;

"Sixth—To return the overplus, if any there be, to the said party of the first part.

"In Witness Whereof, Said party of the first part has hereunto set his hand and seal this 25th day of January, 1921.

"(Signed)    O. B. Frank."

For brevity's sake the grantee in that instrument will be called "The Association." It took possession of the chattels mentioned upon which, at the time, the defendant Bell, garnishee herein, had a chattel mortgage unpaid and overdue. Afterward, on February 7, 1921, the Association, in consideration of the sum of $500 to it paid by Bell, sold and delivered to him those very chattels and he took possession of them. Subsequently, the plaintiff herein instituted this action against Frank to recover for herself and her assignors the balances due them for labor and services performed for him. A writ of attachment was issued and served upon Bell as garnishee, seeking to attach in his hands the personal property involved. Frank did not at the time of the execution of the instrument furnish a list of his creditors and there was no effort by or on behalf of Bell to notify Frank's creditors of the proposed transaction embodied in the written transfer. Neither was there any attempt of that kind made at the time of the sale by the Association to Bell.

1. Answering the notice of garnishment accompanying the service of the writ of attachment, Bell declared, in substance, that he had no property of any kind in his possession or his control belonging to the defendant Frank. This answer being unsatisfactory to the plaintiff, she filed allegations and interrogatories, calling upon Bell for more definite answers. The allegations comprised a repetition of the allegations of the original complaint against Frank and, in addition thereto, the history of the issuance of the writ of attachment and garnishment

and the transfer to the Association and thence to Bell, which the plaintiff declares did not comply with sections of the statute known as the Bulk Sales Law and that Frank did not furnish, nor his grantee receive, a list of creditors of the defendant "as required by Section 8161, Olson's Laws of Oregon, nor five days before nor any time before the sale or transfer of the said property by said defendant Frank, to said corporation hereinafter mentioned." In fact, all of the acts of the defendant, the Association and Bell are declared to be not "as provided by Section 8162, Olson's Oregon Laws, or otherwise or at all." These amount to mere conclusions of law and not averments of fact.

Answering the allegations and interrogatories, the statements respecting the indebtedness alleged to be due to the plaintiff and her assignors are denied. Further answering the allegations, the garnishee charges that:

" * * * at the time said assignment for the benefit of creditors was made by the said defendant to said adjustment bureau this plaintiff and her assignors had full knowledge of the same, and that this plaintiff and her assignors thereupon filed their claims against the said defendant with said adjustment bureau, claiming the same to be preferred claims for wages, and that the same have been accepted as such by said adjustment bureau."

The plaintiff did not deny any of the averments of the answer to the allegations and interrogatories but contented herself with exceptions to the new matter amounting to a demurrer which the court sustained and, without making any findings of fact on the issues raised by the denials, entered judgment against the garnishee overruling his motion to dismiss the garnishment and directing sale of the property involved in the assignment.

2. For the want of findings of fact and conclusions of law on the issues of fact propounded by the answers to the allegations and interrogatories, the judgment, so far as it affects the garnishee or the property claimed to have been attached, is erroneous and of no effect: *Turner* v. *Cyrus,* 91 Or. 462 (179 Pac. 279).

3. Again, it is alleged in the answer and not denied by the plaintiff that she and her assignors presented their claims to the Creditors' Association to whom Frank executed and delivered the instrument quoted and that they were accepted as preferred claims. On that point it is held in *Kerslake* v. *Brower Lumber Co.,* 40 Or. 44 (66 Pac. 437), that one who participates in such transaction cannot affirm it in part and disaffirm it in part. In other words, having adopted the assignment by presenting her claim to the assignee and having it allowed, the plaintiff cannot afterwards renege and pursue the inconsistent remedy of bringing an action. To the same effect is *Stovall* v. *Sheperd,* 10 Ga. App. 498 (73 S. E. 761).

4. The principal question, however, to be decided is whether or not the instrument executed by Frank and delivered to the Association and quoted at the beginning of this opinion is a sale within the meaning of what is known as the Bulk Sales Law, codified in Chapter 11, Sections 8161, 8162 and 8164, Or. L. It is said in Section 8161 that:

"It shall be the duty of every person who shall bargain for or purchase any goods, wares or merchandise in bulk, * * for cash or on credit, to demand and receive from the vendor thereof, * * at least five days before the consummation of such bargain or purchase, and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor, or any promissory note or other evidence of indebtedness therefor, a written statement under oath containing

the names and addresses of all of the creditors of said vendor, together with the amount of indebtedness due or owing, or to become due or owing, by said vendor to each of such creditors, and if there be no such creditors, a written statement under oath to that effect; and it shall be the duty of such vendor to furnish such statement at least five days before any sale * * ."

Section 8162 reads in part as follows:

"After having received from the vendor the written statement under oath mentioned in section 8161 the vendee shall, at least five days before the consummation of such bargain or purchase, and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor, or any promissory note or other evidence of indebtedness for the same, in good faith notify or cause to be notified, personally or by wire or by registered letter, each of the creditors of the vendor named in said statement, of the proposed purchase by him of such goods, wares or merchandise, in bulk, * * ; and whenever any person shall purchase any goods, wares or merchandise, in bulk, * * without first having demanded and received from his vendor the statement under oath as provided in section 8161, and without having also notified or caused to be notified all of the creditors of the vendor named in such statement, as in this section prescribed, such purchase, sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed fraudulent and void."

Section 8164, in substance, defines a sale in bulk to be a sale or transfer of substantially all the goods, fixtures and equipment of a mercantile establishment.

5. In that the statute in question restricts the common-law right of an owner of property to dispose of the same, it must be construed strictly. The reason and spirit of this statute have often been declared to be to give creditors notice of a contemplated sale

of all the debtor's property so as to give the former an opportunity to take measures for their own protection. In other words, it was designed to prevent debtors in failing circumstances from secretly disposing of their effects, pocketing the proceeds and obstructing a fair and ratable application of their assets in discharge of the just claims of their creditors. That being the object of the law, the question is whether the transaction narrated constitutes a violation thereof.

The subject of the act is bargaining for or purchasing any goods in bulk for cash or on credit. The language of the act means such an alienation of the title to the property as would carry the full estate to the grantee so that no other person has any claim whatever to the same. It does not contemplate a fiduciary estate. Here no cash or credit of the Association was involved. It is not pretended that it paid or promised to pay anything for the property. The instrument on its face shows that the design was for the Association to take charge of the property and dispose of it to the best advantage of all concerned, both grantor and his creditors, and to apply it *pro rata* to the benefit of all the creditors. In other words, the design was to carry out the spirit and purpose of the act so far as the protection of all the creditors is concerned. True enough it divested the debtor of his title to the property, but, as stated in *Monteith* v. *Hogg,* 17 Or. 270, 272 (20 Pac. 327, 328):

"An assignment whereby the debtor conveys all his property for the benefit of his creditors amounts to a complete cession or surrender of his property to his creditors. It operates to vest in the assignee the legal title to the property, but the beneficial interest is in the creditors, the *cestuis que trust.* He is seized not for himself, but for the creditors, and

as a consequence, the moment he is seized, the beneficial, substantial interest passes out of him into them. Necessarily the converse of this proposition must be true as to the assignor's interest in the property assigned. After the assignment he is divested of the legal title to the property assigned, and the only possible interest he can have is wholly uncertain and contingent, and according to the nature of the transaction only results after the payment of the debts, and is confined to such residuum as may remain of the unappropriated property or its proceeds. In a word, until the purposes of the trust are satisfied, the assignor has no legal or equitable rights in the assigned property.''

Hence, it is on principle as laid down in this excerpt that Bell, as garnishee, could say as a verity that he had no property of Frank in his possession or under his control.

Premising that the only parties before the court or in any way concerned in this decision are the plaintiff and the garnishee and that nothing herein is intended to affect either the principal debtor or a possible trustee in bankruptcy, we concern ourselves only with the parties before us.

The position of the plaintiff is that the goods have been all along and are now the property of Frank, the defendant; that the attempted assignment was void because it was a sale, but on reason and authority it was not a sale within the meaning of the statute because it did not attempt to divert the property from the *pro rata* application of it to the payment of the defendant's debts without reserve. Such a transaction is not within the purview of the statute's condemnation. On the other hand, it ought to be upheld as one clearly within the spirit of the law, especially as against one who has confessedly sought the benefits of the transaction which she would now defeat.

The following precedents are illustrative of the rule: *McAvoy* v. *Jennings,* 39 Wash. 109 (81 Pac. 77), 44 Wash. 79 (87 Pac. 53); *Eldridge Brewing Co.* v. *Cocheco Bottling Co.,* 79 N. H. 41 (104 Atl. 453); *Cardiff Gypsum Plaster Co.* v. *Hales Coal & Material Co.,* 239 Ill. App. 16.

It is true there are authorities adverse to this conclusion but they depend in part on different statutes and other considerations, and are not persuasive.

In brief, the judgment as affecting the garnishee is not supported by any findings of fact or conclusions of law on the issues raised by the pleadings. The plaintiff participated in the very transaction she now seeks to overturn, has no standing to do so, and, lastly, the convention by which the debtor devoted all his property without reserve to the payment of his creditors is not within the inhibition of the act but rather is consonant with the reason of the law.

The judgment of the Circuit Court is reversed, with directions to dismiss the garnishee and release the property involved.                REVERSED.

McBRIDE, RAND and COSHOW, JJ., concur.