## KIMBALL et al. v. STOKES et al.

No. 20639. Opinion Filed Nov. 10, 1931.

Rehearing Denied March 1, 1932.

O. W. Patchell, for plaintiffs in error.

Blanton, Osborn & Curtis, for defendants in error.

KORNEGAY, J. This case originated in a justice of the peace court in Garvin county. A bill of particulars was filed in the justice court on the 2nd of April, 1925. Four people were sued. Two of them, namely J. A. Stokes and W. B. Wright, were alleged to have been a copartnership under the style of Wright's Grocery, and J. B. Wright and F. L. Wright were alleged to be a partnership under the same name. The bill of particulars set out the indebtedness, and there accompanied the bill of particulars a verified statement of correctness of account, dated March 4, 1925, showing an account made on February 7, 1924, and February 14, 1924, for a total of $343.20, with credits amounting to $175.40, leaving a balance of $167.80. The correctness of this was verified on the 4th of March, 1925, by one of the plaintiffs. Accompanying this was a protested check for $319.80, bearing date of May 27, 1924, payable to the order of Chase & Sanborn, and signed with a printed signature, "Wright's Grocery," and the name of W. B. Wright, which appears in ink. The check had been protested for insufficient funds.

The credits given on the account, according to the bill of particulars, were made on August 28, 1924, and September 1, 1924. It was averred in the bill of particulars that in September, 1924, Stokes and Wright assigned to J. B. Wright and F. L. Wright some of their assets, and that J. B. Wright and F. L. Wright had agreed to pay the balance due the plaintiffs and did pay $50 thereon.

Summons was issued for all of the defendants, requiring them to appear on the 21st of March, 1925, service being made on the 18th. All parties defaulted and the result was that a judgment was rendered against them all and an execution was sued out and levied on a Ford car belonging to W. B. Wright, one of the defendants. When this happened, W. B. Wright and J. A. Stokes gave an appeal bond, with Hardee Russell and Crockett Scrivner as sureties, which was approved on the 31st of March, 1925, followed by a transcript that was filed in the district court.

The matter came on for hearing before the district court on the 11th of January, 1929, and was tried by the district judge, Hon. W. G. Long, parties waiving jury. There was a good deal of evidence introduced, but there does not appear to have been any pleadings filed, either in the justice of the peace court or in the district court, on behalf of the defendants Stokes and Wright.

The evidence clearly showed an original liability, both of Stokes and Wright, to the plaintiffs. It also showed a trust mortgage executed by W. B. Wright, on the 8th of January, 1925, operating as Wright's Grocery, to the Oklahoma City Association of Credit Men, on a printed form with some ink interlineations. The property conveyed is described as being situate in Garvin county, Okla., and is as follows:

"One Ford roadster * * * one Ford delivery car. All store fixtures located in the Burch Building, 219 South Chickasaw St., and also some located in the Driskell Bldg., 405 South Chickasaw St., of Pauls Valley, Okla. Also, all notes, mortgages, and accounts receivable. Also, all other property both personal and real not exempt by the laws of the state of Okla."

Following that is the following in print: "and possession of said property is now delivered unto said party of the second part."

In the portion written in, in ink, is the following:

"It is further agreed in consideration of said first party turning over all his assets to said second party not exempt by law, that the acceptance by any creditor under this agreement shall accept his or their pro rata share in full discharge and release of all indebtedness to date of this agreement."

There was a reference to schedule "A," which follows the signature, W. Ben Wright, and Wright's Grocery, scheduling the claim declared on here as "Chase & Sanborn, $193.20." Attached to that is a schedule apparently of fixtures, with a valuation placed by someone of $2,603.95, and included in that list is a Ford delivery car with a valuation of $350. There is also added a lead pencil list referring to fixtures, page 1 to 3, $2,298.45; delivery trucks, page 4, $400; accounts receivable, pages 5 to 12, $5,623.86; and it appears that part of these fixtures are in the Burch building, and part of them are in the Driskell building, and some of the fixtures were located in Scrivner's Dry Goods building. Under the head of automobiles, originally marked page 4, but corrected to page 5, in the lead pencil inventory, there is a Ford delivery car, $350, and a Ford delivery truck, $50, making the amount of $400, as carried forward in the resume. There is also a final notice to creditors by the Oklahoma City Association of Credit Men, found on page 27, in which a statement is made by the Oklahoma City Credit Association to the creditors that the assignment called for all property, which consisted of a Ford roadster and a Ford delivery car, store fixtures and accounts receivable, and that Mr. Crockett Scrivner laid claim to the majority of them, and

exhibited a bill of sale which he claimed had been given him several months before, and that that left only a few fixtures of a home-made kind that had little value. In the inventory that defendant W. B. Wright assisted in making, these fixtures are put in at $2,298.45.

There was a further statement that the accounts receivable, listed at $5,623.86, were locked in a McCaskey register, the key to which was in the possession of J. B. Wright, a brother of W. B. Wright. There was a statement that two different trips had been made to Pauls Valley, and that the association was informed that J. B. Wright was out of the city but would return shortly. W. B. Wright had promised a number of times to call at the office to help straighten the matter out but had failed to come in. The latter part of that letter is as follows:

"As the matter now stands, we have nothing in the way of assets to dispose of. We are unable to get this party to live up to any of his promises and as the assets that were promised to be turned over to us for the benefit of his creditors under the assignment have not been turned over, we have nothing to liquidate.

"We must admit that we are unable to explain the actions of this debtor and do not see how we can render any further service to creditors in connection with this case. If you have any suggestions to offer, will be glad to hear from you, but as the matter now stands we see nothing to do but close our files and permit the individual creditors to take whatever action they deem necessary.

"Yours very truly,
"Oklahoma City Association of Credit Men, "By A. L. Smith, Manager."

The facts contained in said notice were established by the agents of the association, who handled the matter and gave testimony. Depositions of its managers showing in detail the transaction were introduced.

After the defendant rested, the plaintiffs began a rebuttal, and they introduced the notice of dissolution of the partnership between Stokes and Wright, and it appeared that the dissolution was had by publication on the 6th and 13th of March, 1924, and the dissolution took effect as of February 28, 1924, which made Stokes liable for the plaintiffs' account, the last item of which was February 14th.

From our review of the evidence, it is clear that no honest effort was made by Wright to carry out the terms of the mortgage trust deed, or assignment, as it might be called. It is further clear that the clause that was inserted in this trust deed for a release by the creditors was not complied with by

Wright on his part and that the whole scheme was abandoned largely as a result of Wright's indifference in aiding its being carried out, and his combination with Scrivner, and the bill of sale for the fixtures that antedated several months the trust deed, and that plaintiffs never received any part of the debt due them.

The findings of the court as actually made were that Stokes and Wright originally owed this debt, but the court exonerated them from its payment by virtue of this unfulfilled agreement, and only as a result of that. It is further clear that the plaintiffs have never received anything on the claim, and that defendants did not think enough of the exoneration from liability to make a showing before the justice of the peace to that effect. It is further clear that, though guided by very shrewd attorneys, it never occurred to them to make a plea or answer of any kind in the district court, setting up such exoneration, notwithstanding a verified statement of account had been filed with the justice of the peace, and it remained at all times with the papers that were certified to the district court. The court found that the trust mortgage was never filed or recorded in the office of the county clerk, and that the trustee never executed any bond, and that there was no inventory filed. The court found that after the plaintiffs learned that the trust mortgage had been executed, they did file with the trustee a claim, and thereby the court concluded, as a matter of law, that they had agreed to accept such part as might be paid by the trustee in full satisfaction of their claim, and on that ground alone the court exonerated not only Wright, but Stokes, from liability to the plaintiff, and gave judgment against them.

The brief of the plaintiffs in error sets out the salient facts, and contends that the trial court, on the facts found, should have rendered judgment the other way, and that the trial court erred in refusing a new trial in the case, which was asked for. We think the judgment should have gone the other way on these facts. Stokes owes the debt, undoubtedly. His testimony was but an evasion of the facts. The same way with Wright. The condition of exemption from further liability that was put into the trust deed was never complied with by Wright, and it does not appear that he acted in good faith with his creditor. If it meant anything at all, it meant that Wright was surrendering everything he had, both belonging to the partnership and belonging to himself, not exempted by law.

It is clear that the automobile that was

held out was the most valuable thing in it, and whether it belonged to him or to the partnership would make no difference. Several authorities are cited by the plaintiffs in error to show that if this was anything, it was an accord and satisfaction, and there had been no satisfaction, and that the accord was in truth and in fact not carried out.

The defendants in error, to sustain the judgment exonerating them, give a history of the case, and criticize the method of making up the case-made, and sympathize with this court in the work required of it to search the record, and criticize the method pursued by the stenographer in binding the case-made. We think this last criticism probably has some merit in it, but it happened to be that by a little extra searching this court could ascertain what was in this case-made and what was not in it, and it has reviewed all of the case-made, and the suggestion of dismissing the appeal, we think, would not fit in this case.

A suggestion is made that the brief of plaintiffs in error does not comply with the rules of the court because it did not set forth the pleadings or the judgment of the court from which the appeal was taken, and the charge is made of transgression by the attorney for the plaintiffs in error of our rules. Perhaps this criticism might be, in some respects, warranted, but we do not think it is fatal to review by this court. It was urged in the brief of the plaintiffs in error that the trial court did not give a full and complete finding of facts, and the suggestion is made that the attorney for plaintiffs did not ask for this until the court had indicated what its judgment would be.

The contention is made that we could not set aside the findings because there was some evidence to support them. A statement of facts is given on page 4, and if that statement is true as to the property being turned over, this record is not true, as it is clear that an automobile that was not exempt by law was retained by Mr. Wright, whether it belonged to the partnership or whether it belonged to him individually.

The case of Wilson v. Samuels, from California, 35 Pac. 148, and the case of Brown v. Farnham (Minn.) 51 N. W. 377, and also the case of Stovall v. Shepherd, from Georgia, 73 S. E. 761, and the case of Reever & Co. v. Phillips, 53 Okla. 375, 156 P. 1179, and the case of Herman v. Schlesinger (Wis.) 90 N. W. 460, and the case of Engbretson v. Seiberling (Iowa) 98 N. W. 319, are cited, and copious extracts are made therefrom, as the foundation of an argu-

ment to sustain the judgment of the lower court, and the brief says that it was really laughable that the court found the value of the car to be $200, because under the testimony it was clear that the car, being the separate property of W. B. Wright, was in such condition as to be the laughing stock of the community. The evidence we have examined does not indicate that, but does indicate that the car that Mr. Wright held individually was of more value than $200.

We think it clear that Wright never complied with his agreement to deliver the property, and that the consideration for the promise, if any, that was made by the creditor, who presented his claim believing that he had surrendered the property, no longer exists. Under the circumstances, the judgment of the lower court should have been for the plaintiffs, as defendants owed the debt and they had paid nothing on it. It is apparent that the defendants below have introduced all the evidence that they could introduce on another trial, and probably more, because it is clear now that Stokes was originally liable for this claim, and so was Wright, and there would be no room for equivocation on another trial. We think, unquestionably, that they were not exonerated by virtue of an agreement that was never performed.

This cause is reversed, with directions to the lower court to set aside its findings as to the right of the plaintiffs to have the judgment, and to enter judgment for the amount of plaintiffs' claim, with legal interest from the time it was due, and for costs below as well as in this court, in favor of the plaintiffs in error, and on demand to enter judgment on the appeal bond.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. HEFNER and McNEILL, JJ., absent.